**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

   Plaintiff,

vs.              No. CR 15-1285 JB

ELIJAH SHIRLEY,
MAYNARD SHIRLEY, and
MICHAEL SHIRLEY

   Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

  **THIS MATTER** comes before the Court on: (i) Defendant Maynard Shirley's Objections to United States' Exhibit List [Doc. 82], filed September 20, 2016 (Doc. 96)("Exhibit Objections"); and (ii) Defendant Maynard Shirley's Motion in Limine Regarding Possession of Knives and an Axe, filed September 26, 2016 (Doc. 116)("Motion in Limine"). The Court held a hearing on September 29, 2016. The primary issues are (i) whether Plaintiff United States of America may introduce evidence of Defendant Maynard Shirley's ownership and prior possession of certain knives; and (ii) whether the United States may introduce evidence of Maynard Shirley's ownership and possession of an axe.[1] The Court concludes that evidence of the knives is inadmissible, because the evidence's probative value is substantially outweighed by its risk of unfair prejudice -- the United States concedes that the evidence does not include the actual knife that Maynard Shirley allegedly used in the stabbing. The Court holds that evidence

---

[1]The parties' briefings vary somewhat between spellings of "axe" and "ax." For the sake of consistency, the Court will preserve these variations where present within the quoted text of the parties' briefings. The Court will otherwise use "axe" in the text of its Memorandum Opinion and Order.

of the axe, however, is admissible, because it does not pose the same risk -- the United States contends that Maynard Shirley actually used the axe to destroy his white BMW.  The Court will therefore sustain the Exhibit Objections in part and overrule them in part, and grant the Motion in Limine in part and deny it in part.

## FACTUAL BACKGROUND

The Court takes its facts primarily from the Amended Criminal Complaint, filed March 25, 2015 (Doc. 4)("Amended Complaint").  The Court also draws from the Transcript of Preliminary/Detention Hearing held on March 30, 2015, filed May 6, 2015 (Doc. 36) ("Preliminary Hearing Tr."), and the United States' Motion *In Limine* to Admit Evidence [sic] *Res Gestae* Evidence Not Charged in the Indictment Pursuant to Federal Rules of Evidence 401, 403, 404(B), filed August 29, 2016 (Doc. 77)("Res Gestae Motion").  The Court relies on these factual accounts for background purposes only, as Maynard Shirley is presumed innocent until proven guilty at trial.  This presumption of innocence, which is always important, is especially important here, as Maynard Shirley has asserted an alibi defense.  See Defendant Maynard Shirley's Notice of Alibi, filed June 14, 2016 (Doc. 72).

The Court's discussion of the facts proceeds as follows.  First, the Court will discuss the circumstances and witness accounts of the killing that occurred in the early morning of March 21, 2015.  Second, the Court will discuss the search for Maynard Shirley and his two brothers in the aftermath of the killing.  Third, the Court will discuss the circumstances of Maynard Shirley's arrest on March 25, 2015.

1.     **Background.**

Before the offense date of March 21, 2015, Maynard Shirley's brother, Elijah Shirley, and Elijah's girlfriend, Valerie Jim, had been in a relationship for ten years.  See Amended

Complaint ¶ 8, at 3-4.  Because of relationship difficulties, however, V. Jim left E. Shirley about a week before the incident and began an intimate relationship with Brandon BlueEyes, with whom E. Shirley had been close friends for years.  See Amended Complaint ¶¶ 7 and 8, at 3-4. V. Jim did not tell E. Shirley that she intended to move in with Brandon BlueEyes.  See Amended Complaint ¶ 11, at 5.  According to V. Jim's mother, Cornelia Jim, V. Jim left E. Shirley "because he hit and choked her and [] she did not want to go back to him, as she was afraid of him."  Amended Complaint ¶ 11, at 5-6.

Early in the morning of March 21, 2015, E. Shirley sent multiple text messages to C. Jim inquiring about V. Jim's location.  See Amended Complaint ¶ 11, at 5.  C. Jim initially ignored these messages, but at 1:43 a.m. she responded that V. Jim was living with Brandon BlueEyes in Fruitland, New Mexico, within the exterior boundaries of the Navajo Nation Indian Reservation, and that E. Shirley "needed to leave Valerie alone and let her move on with her life . . . ." Amended Complaint ¶ 11, at 5.  E. Shirley told C. Jim that Brandon BlueEyes was his friend and that he was going to "kick [Brandon BlueEyes'] ass." Amended Complaint ¶ 11, at 5.

**2.    The Homicide on March 21, 2015.**

Within an hour of speaking with C. Jim, E. Shirley and his brothers Maynard Shirley and Michael Shirley -- all enrolled members of the Navajo Nation, see Complaint ¶ 18, at 11-12 -- drove to the BlueEyes' trailer home in Fruitland.  See Amended Complaint ¶ 2, at 1.  Upon arriving, the brothers forcibly entered the home while the BlueEyes family and V. Jim slept.  See Amended Complaint ¶ 8, at 3.  The brothers proceeded directly to B.BlueEyes' bedroom down the hall.  See Amended Complaint ¶ 8, at 3.  Upon hearing the noise and intrusion, Brandon BlueEyes stepped out of his bedroom and into the hallway, where the Shirley brothers immediately began stabbing him.  See Amended Complaint ¶ 8, at 3.  V. Jim followed and

observed E. Shirley holding an unknown object in his hand, which he appeared to use to stab Brandon BlueEyes.  See Amended Complaint ¶ 8, at 3.

Upon hearing the commotion, Brandon BlueEyes' father, Perry BlueEyes, woke up and stepped into the hallway, where he saw E. Shirley and Brandon BlueEyes fighting in the living room.  See Amended Complaint ¶ 10, at 4.  As Perry BlueEyes proceeded down the hallway to assist his son, one of the Shirley brothers emerged and stabbed Perry BlueEyes with a banana-shaped knife.  See Amended Complaint ¶ 10, at 4; Preliminary Hearing Tr. at 14:23-24 (Cahoon).  See also Preliminary Hearing Tr. at 13:7-14 (Cahoon)(stating that Perry BlueEyes was "almost immediately . . . attacked and stabbed multiple times.").  The stabbing persisted until V. Jim interceded and told the attacker to leave.  See Amended Complaint ¶ 10, at 4.  By that point, Perry BlueEyes was seriously injured and could not assist Brandon BlueEyes.  See Amended Complaint ¶ 9, at 4.

Janet BlueEyes and Lakisha BlueEyes -- Brandon BlueEyes' mother and sister, respectively -- were sleeping in a bedroom on the opposite side of the residence when the Shirley brothers broke in to the house on March 21, 2015.  See Amended Complaint ¶ 12, at 6.  When J. BlueEyes heard the commotion, she exited the bedroom and saw Maynard Shirley stabbing Brandon BlueEyes in the living room with a banana-shaped knife.  See Amended Complaint ¶ 12, at 6; Preliminary Hearing Tr. at 15:24-25, 16:1 (Cahoon).  As she approached, Maynard Shirley disengaged from stabbing Brandon BlueEyes and began threatening J. BlueEyes with the knife.  See Amended Complaint ¶ 12, at 6.  L. BlueEyes followed J. BlueEyes and observed Maynard Shirley threatening her mother with a banana-shaped knife.  See Amended Complaint ¶ 13, at 7.  When J. BlueEyes saw L. BlueEyes, she directed her to call 911.  See Amended Complaint ¶ 13, at 7.

During the commotion, one of the Shirley brothers exited the trailer to retrieve a flare gun, returned, and shot at Perry BlueEyes between his legs as Perry BlueEyes lay on the floor. See Amended Complaint ¶ 12, at 6.   The three Shirley brothers then left.   See Amended Complaint ¶ 12, at 6.   J. BlueEyes recalls that, in the subsequent confusion, V. Jim was on the ground, holding Brandon BlueEyes in her arms and crying, and repeatedly saying that "Maynard was the one who stabbed and killed [Brandon BlueEyes]."   Amended Complaint ¶ 12, at 7.

At 2:44 a.m., 911 dispatchers received a call from L. BlueEyes advising that her brother, Brandon BlueEyes, and father, Perry BlueEyes, had been stabbed in their trailer home.   See Amended Complaint ¶ 2, at 1.   L. BlueEyes advised that there was a lot of blood and that the Shirley brothers had departed the scene.   See Amended Complaint ¶ 2, at 1.   Navajo Nation Police Officers Kurtis Halkani and Jo Donna Salt were promptly dispatched to the scene at 2:50 a.m.   See Amended Complaint ¶ 3, at 1-2.   Shortly thereafter, at 3:06 a.m., a relative of Brandon BlueEyes and Perry BlueEyes contacted the Shiprock Police Department and "reported that someone had broken into said residence, beat up [Brandon BlueEyes], and that [Brandon BlueEyes] was not breathing."   Amended Complaint ¶ 4, at 2.

Halkani arrived on scene at approximately 3:09 a.m., followed shortly thereafter by Salt, who took position outside the residence to provide security.   See Amended Complaint ¶ 5, at 2. Upon observing a blood-like substance on the deck area leading into the home and on the front door, Halkani entered the residence and found Brandon BlueEyes lying on the ground, soaked in blood.   See Amended Complaint ¶ 5, at 2; Preliminary Hearing Tr. at 8:17-21 (Cahoon).   V. Jim was on the ground embracing Brandon BlueEyes, crying and distraught.   See Amended Complaint ¶ 5, at 2.   According to Halkani, Brandon BlueEyes had no pulse and had a large stab wound on his left upper chest area.   See Amended Complaint ¶ 5, at 2; Preliminary Hearing Tr.

- 5 -

at 9:1-4 (Cahoon).  Halkani also observed Perry BlueEyes nearby, bent over on the couch in the living room, with multiple stab wounds and covered in blood.  See Amended Complaint ¶ 5, at 2; Preliminary Hearing Tr. at 9:8-10 (Cahoon).  Blood appeared to be on the floor and walls of the hallway leading back to two bedrooms.  See Amended Complaint ¶ 5, at 2.

V. Jim informed Halkani that she used to be in a relationship with E. Shirley, that all three brothers live in Kirtland, New Mexico, and that they drive a white BMW.  See Amended Complaint ¶ 7, at 3.  See also Preliminary Hearing Tr. at 26:14-15 (Cahoon)(stating that Maynard Shirley owns the BMW).  V. Jim added that she had been in a relationship with Brandon BlueEyes for one month, see Amended Complaint ¶ 7, at 3, that she had recently lived with the Shirleys in Kirtland, and that E. Shirley was "tough" and a "bully."  Amended Complaint ¶ 8, at 4.  She also relayed that Maynard Shirley had been in prison for a long time and that "she is scared of him."  Amended Complaint ¶ 8, at 4.

At 3:38 a.m., Perry BlueEyes was rushed to San Juan Regional Medical Center for injuries he sustained while trying to protect Brandon BlueEyes.  See Amended Complaint ¶ 9, at 3.  As of March 25, 2015, Perry BlueEyes was still being treated for a collapsed lung and multiple stab wounds.  See Amended Complaint ¶ 9, at 4.  In an interview at the hospital a couple days after the incident, Perry BlueEyes, who is about five feet, eight inches tall, described his attacker as being as "just a tad bit smaller than him" and said that he was stabbed with a banana-shaped knife.  Preliminary Hearing Tr. at 14:18-24 (Cahoon).

### 3.    The Search for the Shirley Brothers.

Later in the day on March 21, 2015, Special Agent Cary S. Cahoon of the United States Department of Justice, Federal Bureau of Investigation, and Criminal Investigator Jefferson Joe of the Navajo Department of Criminal Investigations, commenced an effort to locate Maynard,

Elijah, and Michael Shirley.  See Amended Complaint ¶ 14, at 8.  Cahoon and Joe met with the Shirley brothers' mother, Althea Shirley, who said that the Shirley brothers were at their home in Kirtland and that she had just come from there.  See Amended Complaint ¶ 14, at 8; Preliminary Hearing Tr. at 27:4-10 (Cahoon).  Cahoon and Joe instructed A. Shirley to go to the brothers' home and relay that Cahoon and Joe needed to speak with them about the incident that occured early that morning.  See Amended Complaint ¶ 14, at 8.  When A. Shirley arrived, however, she discovered that Maynard Shirley and his fiancée, Arnelia Williams, had "completely cleaned out their room of their belongings and had left the house."  Amended Complaint ¶ 14, at 8.  E. Shirley was not there either; only Michael Shirley remained.  See Amended Complaint ¶ 14, at 8.

As it happened, E. Shirley and Maynard Shirley had relocated to their grandmother's home and "sheep camp" thirty minutes outside of Farmington, New Mexico, on the Navajo Indian Reservation.  See Res Gestae Motion at 8; Amended Complaint ¶ 15, at 9; Preliminary Hearing Tr. at 85:19 (Cahoon).  In their absence, A. Shirley urged Michael to call and set up a time to meet with Cahoon and discuss the incident.  See Amended Complaint ¶ 14, at 8.  Michael Shirley consented, and a meeting was set for 3:00 p.m. that day at the Criminal Investigations office in Shiprock, New Mexico.  See Amended Complaint ¶ 14, at 8.  On the telephone, Michael Shirley indicated that he would call ahead of the appointment to confirm that he could make it; however, Cahoon never received such confirmation, despite numerous attempts to contact Michael Shirley by phone.  See Amended Complaint ¶ 14, at 8.  Cahoon was likewise unable to reach Michael Shirley the following day, March 22, 2015.  See Amended Complaint ¶ 14, at 9.

On March 23, 2015, A. Shirley, Michael Shirley, and other relatives traveled to the grandmother's house to urge Maynard Shirley and E. Shirley to surrender themselves to law enforcement.  See Res Gestae Motion at 8; Amended Complaint ¶ 14, at 9.  Elijah agreed to turn

himself in, but Michael Shirley and Maynard Shirley elected to remain at the house, see Res Gestae Motion at 8, stating that "they refused to meet with law enforcement," Amended Complaint ¶ 15, at 9. See Preliminary Hearing Tr. at 32:3 (Cahoon)(stating that E. Shirley turned himself in). According to the relatives who were present, the Shirley brothers stated that "law enforcement could come and try to get them if they wanted." Amended Complaint ¶ 15, at 9. Maynard Shirley and Michael Shirley then began yelling at and getting angry with the relatives, causing them to leave the property out of "fear for their safety and the potential something bad could happen if law enforcement came and tried to arrest Michael and Maynard." Amended Complaint ¶ 15, at 9.

E. Shirley was subsequently taken to the station at 4:00 p.m. on March 23, 2015, where he "acted as if it was the first time he heard about the incident involving [Brandon BlueEyes]." Amended Complaint ¶ 15, at 9. After some questioning, E. Shirley invoked his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and requested an attorney. See Amended Complaint ¶ 15, at 9.

After E. Shirley left, Maynard Shirley, Michael Shirley, A. Williams, and other witnesses went to the "wash" by the grandmother's house where they had concealed Maynard Shirley's white BMW. See Res Gestae Motion at 8; Amended Complaint ¶ 15, at 9. Together, they removed their belongings from the vehicle. See Res Gestae Motion at 8. Maynard Shirley and Michael Shirley then proceeded to wipe the vehicle down "to remove any latent prints[.]" Res Gestae Motion at 8. Finally, they "damaged the interior of the vehicle, broke out windows, and [] set the car on fire." Res Gestae Motion at 8.

The following day, March 24, 2015, family members advised Joe that Michael Shirley and Maynard Shirley had burned the white BMW at their grandmother's house. See Amended

Complaint ¶ 16, at 10.  Law enforcement subsequently went to the property and found the burned BMW, yet Michael Shirley and Maynard Shirley were nowhere to be found.  See Amended Complaint ¶ 16, at 10.

      **4.**        **Maynard Shirley's Arrest.**

On March 25, 2015, the Honorable B. Paul Briones, United States Magistrate Judge for the District of New Mexico, issued a warrant for Maynard Shirley's arrest.  See Arrest Warrant for Maynard Shirley at 1, filed March 25, 2015 (Doc. 2).  That day, the Federal Bureau of Investigation received word that Maynard Shirley and A. Williams had travelled to Aztec, New Mexico, where they were staying at a cousin's trailer home.  See Preliminary Hearing Tr. at 37:2-5 (Mott, Cahoon).  Acting on this information, law enforcement agents/officers surrounded the residence.  See Preliminary Hearing Tr. at 37:12-21 (Cahoon).  After repeated knocks and unsuccessful attempts to make oral contact with either Maynard Shirley or A. Williams, the officials entered the residence with a key that the cousin provided.  See Preliminary Hearing Tr. at 37:19-21 (Cahoon).

Inside, the officials found A. Williams in one of the trailer's bathrooms.  See Preliminary Hearing Tr. at 37:21-24 (Cahoon).  The officials inquired about Maynard Shirley's whereabouts, but A. Williams said that she did not know.  See Preliminary Hearing Tr. at 37:24-25 (Cahoon).  A. Williams was then detained while the officials cleared the rest of the residence.  See Preliminary Hearing Tr. at 38:1 (Cahoon).  As the officers cleared the back bedroom, they discovered Maynard Shirley concealed between a mattress and box spring of a bed in the room.  See Preliminary Hearing Tr. at 38:2-4 (Cahoon).  Maynard was armed with a knife.  See Preliminary Hearing Tr. at 38:4 (Cahoon).  In Cahoon's opinion, the knife looked like a hunting knife, not a banana knife as the witnesses to Brandon BlueEyes' killing described that weapon.

See Preliminary Hearing Tr. at 39:1-3 (Mott, Cahoon).  Maynard Shirley was then taken into

custody.  See Record of Arrest of Maynard Shirley at 1, entered March 27, 2015 (Doc. 8)([text-

only-entry]).

Subsequent to Maynard Shirley's and A. Williams' arrest, law enforcement "obtained a

warrant to search bags belonging to Mr. Shirley and his fiancée that we[re] found inside the

home where they were arrested."  Motion in Limine at 2.  Among these belongings were "several

knives, including pocketknives and a Gerber knife, as well as an axe."  Motion in Limine at 2.

## PROCEDURAL BACKGROUND

The United States commenced this action on March 25, 2015.  See Criminal Complaint at

1, filed March 25, 2015 (Doc. 1)("Complaint").  In the Complaint, the United States recited the

foregoing facts, described the Shirley brothers' physical characteristics according to government

databases, and argued that the Shirley brothers matched the descriptions provided by the

witnesses who were present at the BlueEyes residence during the stabbing of Brandon BlueEyes

and Perry BlueEyes.  See Complaint ¶ 17, at 11.  Based on these allegations, the United States

concluded that there was probable cause to charge E. Shirley, Maynard Shirley, and Michael

Shirley with murder, aiding and abetting, and assault.  See Complaint ¶ 18, at 11-12.

The following evening, on March 26, 2015, Michael Shirley was arrested in Farmington.

See Preliminary Hearing Tr. at 40:13-18 (Cahoon).  At that point, all three Shirley brothers were

in custody -- E. Shirley had surrendered on March 23, 2015, see Amended Complaint ¶ 15, at 9,

and Maynard Shirley had been arrested on March 25, 2015, see Preliminary Hearing Tr. at

39:11-20 (Mott, Cahoon).

On April 14, 2015, a Grand Jury indicted E. Shirley, Maynard Shirley, and Michael

Shirley on three counts: (i) unlawfully killing Brandon BlueEyes -- with a knife -- with malice

aforethought in violation of 18 U.S.C. §§ 1153, 111, and 18 U.S.C. § 2; (ii) assaulting Perry BlueEyes and causing serious bodily injury in violation of 18 U.S.C. §§ 1153, 113(a)(6), and 18 U.S.C. § 2; and (iii) assaulting Perry BlueEyes with a dangerous weapon -- a knife -- with intent to inflict bodily harm in violation of 18 U.S.C. §§ 1153, 113(a)(3), and 18 U.S.C. § 2.  See Indictment at 1-2, filed April 14, 2015 (Doc. 25).  On February 25, 2016, the Court set trial for October 17, 2016.  See Order to Continue at 2, filed February 25, 2016 (Doc. 66).

On September 21, 2016, in proceedings before the Honorable William P. Lynch, United States Magistrate Judge for the District of New Mexico, Michael Shirley entered a guilty plea as to all three counts charged in the indictment.  See Clerk's Minutes for Plea Hearing held on 9/21/2016 at 1, entered September 23, 2016 (Doc. 109).  E. Shirley likewise pled guilty in the same proceedings.  See Clerk's Minutes for Plea Hearing held on 9/21/2016 at 1, entered September 23, 2016 (Doc. 110).  Maynard Shirley is now the sole Defendant who will proceed to trial on October 17, 2016.

With Maynard Shirley's trial now set, the United States seeks to introduce exhibits.  See United States' Exhibit List, filed September 6, 2016 (Doc. 92)("United States' Exhibit List").  Maynard Shirley initially objected to a variety of items depicted in these exhibits.  See Exhibit Objections at 1-3.  At the hearing, however, the parties indicated that they had resolved most of their disagreements and that the primary remaining dispute is whether the Court should admit evidence -- both viva voce and physical evidence, as well as photographs -- about certain knives and an axe.  See Transcript of Hearing at 13:11-19 (taken September 29, 2016)("Exhibit Hearing Tr.").[2]  Specifically, Maynard Shirley maintains his objection to the admission of pocketknives, a

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Bear Gryllis [sic] Gerber Knife and Bear Gryllis [sic] Gerber Axe,[3] as well as photographs of the same.  See Exhibit Objections at 2  (raising objections to Exhibits 120-121, 155-156, and 165-166); id. at 3 (objecting to Exhibits 160-184); Notice of Objections to Proposed Government Evidence Related to Knives Seized from Belongings of Maynard Shirley and Arnelia Williams at 1, filed October 12, 2016 (Doc. 134)("Photograph Objections")(objecting to Exhibits 121, 155-157, 164-165, 179, and 182).  See generally Motion in Limine (objecting to all evidence of the knives and axe).  Maynard Shirley also objects to "evidence that [he] was holding a knife at the time of his arrest."  Defendant Maynard Shirley's Response to United States' Motion *In Limine* to Admit [] Res Gestae Evidence Not Charged in the Indictment Prusant [sic] to Federal Rules of Evidence 401, 403, 404(B) [Doc. 77] at 1, filed September 6, 2016 (Doc. 87)("Res Gestae Motion Response").  The Court will discuss the parties' arguments in support of their respective positions as set forth in a variety of pleadings filed since late-August 2016.

> ### 1.        United States' Res Gestae Motion.

On August 29, 2016, the United States moved to admit "evidence of conduct other than that charged in the indictment . . . as *res gestae*."  Res Gestae Motion at 1.  Relevant here, the United States seeks to admit evidence that Maynard Shirley "armed himself with a knife and concealed himself . . . between a box spring and mattress" when he was arrested on March 25, 2015.  Res Gestae Motion at 2.  See id. (stating that the knife appeared to be a hunting knife).  This evidence is admissible, the United States argues, because it is "intrinsic to the crime charged."  Res Gestae Motion at 10 (citations omitted).  In particular, the United States contends

---

[3]At the Exhibit Hearing, Maynard Shirley's counsel, Theresa Duncan, clarified that these items bear the eponymous name of "TV personality" and "survivalist," Bear Grylls.  Exhibit Hearing Tr. at 15:24-16:1 (Duncan).  The Court notes that the parties' briefings incorrectly refer to "Bear Gryllis," not "Bear Grylls" products.  For the sake of consistency, however, the Court will use the incorrect "Gryllis" in the Memorandum Opinion and Order's text.

that "[t]he circumstances leading up to a Defendant's arrest are 'inextricably intertwined with proper evidence'" and should therefore be admissible at trial.  Res Gestae Motion at 10 (quoting United States v. McVeigh, 153 F.3d 1166, at 1203 (10th Cir. 1999)).  Further, the United States argues that the evidence is offered for a "proper purpose" under rule 404(b) of the Federal Rules of Evidence.  Res Gestae Motion at 13.  Namely, the United States contends that "Maynard's concealment of his person, while armed with a knife is admissible to show consciousness of guilt."  Res Gestae Motion at 16.  According to the United States, this purpose does not rely on an improper propensity inference.  See Res Gestae Motion at 16.

**2.  Maynard Shirley's Res Gestae Motion Response.**

On September 6, 2016, Maynard Shirley submitted a response to the United States' Res Gestae Motion.  See Res Gestae Motion Response at 1.  Maynard Shirley primarily objects to the admission of "evidence that [he] was holding a knife at the time of his arrest."  Res Gestae Motion Response at 1.  He argues that the proffered evidence is "simply not relevant to any fact in issue in this case," because there is "no allegation that the knife . . . was even remotely connected to the crimes with which he is charged."  Res Gestae Motion Response at 4.  He further argues that, even if the evidence is "intrinsic" under rule 404(b), "any arguable probative value that evidence may have is substantially outweighed by the danger of unfair prejudice."  Res Gestae Motion Response at 4.

**3.  United States' Exhibit List.**

The United States filed its list of anticipated exhibits on September 6, 2016.  See United States' Exhibit List at 1.  This 192-item list includes physical evidence, as well as photographs, of a Bear Gryllis Gerber Knife and Bear Gryllis Gerber Axe.  See United States' Exhibit List Nos. 120-121, 155-157, 164-166, 179, and 182.  The United States later amended this list to add

six additional items unrelated to the present discussion.  See United States' Amended Exhibit List Nos. 193-198, filed September 28, 2016 (Doc. 123).

###      4.      **United States' Res Gestae Motion Reply.**

On September 20, 2016, the United States submitted its reply to Maynard Shirley's Res Gestae Motion Response.  See United States Reply to Defendant Maynard Shirley's Response to United States' Motion to Admit *Res Gestae* Evidence at 1, filed September 20, 2016 (Doc. 95) ("Res Gestae Motion Reply").  With respect to Maynard Shirley's objection to evidence of the knife, the United States concedes that it "does not allege that there is direct evidence that the knife Defendant held while he concealed himself from law enforcement was the knife used to kill [Brandon BlueEyes] and seriously injury [sic] [Perry BlueEyes]."  Res Gestae Motion Reply at 4.  Instead, the United States contends that Maynard Shirley's "possession of multiple knives is admissible . . . as circumstantial evidence as to access to and ability to produce knives for use during the offense . . . ."  Res Gestae Motion Reply at 4.  Moreover, the United States argues that Maynard Shirley's "possession of a knife during flight, and while he actively concealed himself from law enforcement is relevant to his consciousness of guilt."  Res Gestae Motion Reply at 5.  As in its original Motion, the United States contends that this line of analysis "does not elicit impermissible propensity evidence, but rather admission by conduct during and in relation to the offense for which he is charged."  Res Gestae Motion Reply at 4.

###      5.      **Maynard Shirley's Exhibit Objections.**

On September 20, 2016, Maynard Shirley filed his objections to the United States' Exhibit List.  See Exhibit Objections at 1.  Maynard Shirley primarily objects to Exhibits 120-121, 155-156, and 165-166, which "include a 'Bear Gryllis Gerber Ax (Physical)' and 'Bear Gryllis Gerber Knife (Physical),' as well as photographs of the same."  Exhibit Objections at 2.

Maynard Shirley posits that these Exhibits are "irrelevant" and that "[i]rrelevant evidence is not admissible" pursuant to rule 402 of the Federal Rules of Evidence.  Exhibit Objections at 2.  He also argues that, under rule 403 of the Federal Rules of Evidence, "whatever minimal probative value the evidence may have is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury."  Exhibit Objections at 2.

### 6.     United States' (Second) Res Gestae Motion Reply.

On September 26, 2016, the United States renewed its Res Gestae Motion and submitted additional arguments in reply to Maynard Shirley's Res Gestae Motion Response.  See United States Reply to Defendant Maynard Shirley's Response to United States' Motion to Admit *Res Gestae* Evidence at 1, filed September 26, 2016 (Doc. 120)("Second Res Gestae Motion Reply").  The United States now argues that Maynard Shirley's possession of knives and use of a knife at the time of his arrest is relevant as circumstantial evidence of his "intent to commit the charged offenses . . . ."  Second Res Gestae Motion Reply at 3.  In the United States' view, this evidence illustrates Maynard Shirley's "access to, familiarity with, and use of knives," and demonstrates his "conscious effort to dispose of [his] machete like knife used to commit and aid in committing the offenses committed on March 21, 2015."  Second Res Gestae Motion Reply at 4.  Moreover, the United States contends that this evidence is "relevant to the disputed issues of [Maynard Shirley's] participation in the charged offenses and his efforts to aid and abet others."  Second Res Gestae Motion Reply at 5.  In short, the United States argues that the evidence is "admissible to show Defendant's association with the crimes and his access to a variety of weapons."  Second Res Gestae Motion Reply at 6.

The United States also advances its earlier contention that evidence that Maynard Shirley held a knife when he was arrested is admissible as "circumstantial evidence of Defendant's intent

and consciousness of guilt." Second Res Gestae Motion Reply at 7. The United States argues that evidence of Maynard Shirley's multiple knives is admissible as "circumstantial evidence as to access to and ability to produce knives for use during the offense." Second Res Gestae Motion Reply at 7. The United States reasons that "sharp objects" were used in the offenses, and that Maynard Shirley's possession of knives, including the one he clutched at the time of his arrest, "are relevant to the determination of the use of a dangerous weapon during the offenses, to the efforts taken by law enforcement during the course of the investigation, and in relation to the allegations of aiding and abetting." Second Res Gestae Motion Reply at 7.

Finally, the United States argues that "flight, escape, and other 'admissions by conduct' are probative 'as circumstantial evidence of guilt . . . .'" Second Res Gestae Motion Reply at 7 (quoting United States v. Myers, 550 F.2d 1036, 1049 (5th Cir. 1977)). The United States argues that Maynard Shirley's "possession of a knife during flight, and while he actively concealed himself from law enforcement is relevant to show his consciousness of guilt." Second Res Gestae Motion Reply at 7-8.

### 7.    Maynard Shirley's Motion in Limine.

On September 26, 2016, Maynard Shirley filed a motion in limine to exclude from trial "evidence of his ownership and prior possession of knives, and his ownership and possession of an ax." Motion in Limine at 1. He also moves the Court "to order the United States to instruct its witnesses not to refer to these matters during their testimony." Motion in Limine at 1. His principal objection is that "[t]here is no evidence that any of these knives or the axe were used to commit the offenses charged." Motion in Limine at 2. As a result, he argues, the Court should exclude evidence of the knives and axe, because they are "irrelevant" and "unfairly prejudicial." Motion in Limine at 4, 7.

a.    **Maynard Shirley's Objection to Evidence of the Knives.**

Maynard Shirley begins by highlighting that the United States "concedes that it has no evidence" that any of the knives it seeks to introduce were used to commit the alleged offense on March 21, 2015.  Motion in Limine at 5.  Maynard Shirley argues that "none of the knives match the description of a knife witnesses saw at the scene, and [it] is undisputed that [he] did not use or threaten to use the knife found in his possession at the time of the arrest."  Motion in Limine at 5.  As a result, he argues that evidence of his "possession of, or access to, knives unconnected to the charged offenses . . . is inadmissible under Rules 402, 403 and 404 of the Federal Rules of Evidence."  Motion in Limine at 5.

Turning first to relevancy under rule 402, Maynard Shirley notes that "[i]rrelevant evidence is not admissible at trial."  Motion in Limine at 2 (internal quotation marks omitted).  Thus, he argues, evidence that he "owned or possessed knives that were never used in the commission of the charged offenses is simply not relevant and must be excluded."  Motion in Limine at 5 (citing United States v. Linares, 367 F.3d 941, 952 (D.C. Cir. 2004)).

With respect to rule 404, Maynard Shirley notes that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith."  Motion in Limine at 3.  Consequently, he argues, the United States' only purposes for offering evidence of the knives -- in his view, "to prove that Mr. Shirley is the kind of person who owns knives or that he has a violent disposition" -- are "impermissible purposes."  Motion in Limine at 6 (citing United States v. Thomas, 321 F.3d 627 (7th Cir. 2003)).

Finally, Maynard Shirley argues that, under rule 403, any probative value of evidence that he held a knife at the time of his arrest is "substantially outweighed by the danger of unfair prejudice."  Motion in Limine at 6.  He contends that, "[a]lthough evidence of flight is generally

admissible to show consciousness of guilt, such evidence is 'only marginally probative as to the ultimate issue.'"  Motion in Limine at 6 (quoting <u>United States v. Johnson</u>, 535 F.3d 892, 895 (8th Cir. 2008)(citation omitted)).  Thus, in his reading of relevant case law, courts "must assess the possible probative value in each case" and scrutinize the confidence with which a chain of inferences can be made from a defendant's behavior to consciousness of guilt.  Motion in Limine at 6 (quoting <u>United States v. Johnson</u>, 535 F.3d at 895)(citation and internal quotation marks omitted)).  Here, Maynard Shirley argues, the evidence that he was holding a knife when he was arrested "is less than marginally probative, particularly given there is no evidence that Mr. Shirley used or threatened to use the knife against the officers."  Motion in Limine at 6.  He contends that, given that there is no such evidence, "the Court should have little confidence that a proper inference may be drawn from the possession of the knife . . . ."  Motion in Limine at 6-7.

        **b.**     <u>**Maynard Shirley's Objection to Evidence of the Axe**</u>.

With respect to the axe, Maynard Shirley contends that "[t]here is zero evidence that an axe was used during the attacks underlying the charges against [him]."  Motion in Limine at 7.  Maynard Shirley argues that, instead, the United States is seeking to introduce evidence that he used the axe in the destruction of the BMW "as evidence of consciousness of guilt."  Motion in Limine at 7.  Thus, as noted above with respect to the knives, he argues that "evidence related to 'consciousness of guilt' is 'only marginally probative as to the ultimate issue' of whether the defendant committed the crimes with which he is charged."  Motion in Limine at 7 (quoting <u>United States v. Johnson</u>, 535 F.3d at 895).  Maynard Shirley argues that, given this principle, as well as "the lack of evidence tying the axe to the destruction of the car, . . . whatever probative value the axe may have to this collateral issue is substantially outweighed by the very real dangers of unfair prejudice, confusing the issues, and misleading the jury."  Motion in Limine at

7 (citing Fed. R. Evid. 403). Finally, he argues that there is an "unacceptable risk that the jury will improperly infer that possession of the axe makes it more likely that he possessed one of the knives" used in the charged offense or that "the axe was used to commit the charged offenses." Motion in Limine at 8. He argues that, in light of all these reasons, the Court should exclude evidence of the axe from trial. Motion in Limine at 8.

    **8.**    <u>United States' Response to Maynard Shirley's Exhibit Objections.</u>

    The United States responded to Maynard Shirley's Exhibit Objections on September 28, 2016. <u>See</u> United States' Response to Defendant's Objections to Exhibits and Motion to Amend the United States Exhibit List at 1, filed September 28, 2016 (Doc. 122)("Exhibit Objections Response"). With respect to Exhibit 120 ("Bear Gryllis Gerber Ax (Physical)") and Exhibit 121 ("Bear Gryllis Gerber Knife (Physical)") the United States argues that the Exhibits "are relevant, admissible, and present no unfair prejudice or danger of confusing the issues or misleading the jury." Exhibit Objections Response at 2. The United States explains that its theory is that the Shirley brothers "sought to destroy all evidence associated with their crimes, including the objects used to inflict the injuries upon both Brandon and Perry BlueEyes." Exhibit Objections Respons at 2. To that end, the United States intends to demonstrate that the FBI forensically tested the Gerber Knife and Axe, but that the testing did not yield "evidence . . . associating the Defendant with the charged offenses." Exhibit Objections Response at 2. The United States elaborates upon its theories regarding both Exhibits as follows.

    First, in terms of the Bear Gryllis Knife (Exhibit 121), the United States alleges that it "is the knife Maynard Shirley armed himself with and held to his chest when he concealed himself from law enforcement" between the mattress and box spring on the day of his arrest, March 25, 2015. Exhibit Objections Response at 3. The United States contends that the knife is evidence

of Maynard Shirley's "consciousness of guilt and continued flight from law enforcement." Exhibit Objections Response at 3.

Second, the United States alleges that the Bear Gryllis Axe (Exhibit 120) was found among Maynard Shirley's possessions and that it is relevant to his "participation in the destruction of evidence, specifically the burning to Maynard Shirley's BMW . . . ."  Exhibit Objections Response at 2.  The United States intends to demonstrate that Maynard Shirley and Michael Shirley used the Axe to "gain access to the gas tank in the [BMW]" and that, as a result, "the back seat of the BMW, near the gas tank, was observed to have a square portion cut out." Exhibit Objections Response at 2.  This "destruction of the vehicle associated with the offenses for which [Maynard Shirley] is charged," the United States contends, "is admissible as evidence of his consciousness of guilt."  Exhibit Objections Response at 2-3.

Turning to the photographs in Exhibits 165 ("Close up of Bear Gryllis Ax with Cordage in bags") and 166 ("Bear Gryllis Ax with Scale"),[4] the United States alleges that they depict items located in Maynard Shirley's and A. Williams' personal belongings.   See Exhibit Objections Response at 4.  The United States argues that the photographs are relevant and posits four theories for their admissibility: (i) first, "to demonstrate steps taken by law enforcement in the course of the investigation, including explanations as to why particular items were examined further and sent for forensic testing,"   Exhibit Objections Response at 4; (ii) second, "to corroborate testimony that Elijah Shirley, Maynard Shirley, and A. W[illiams] were together, in flight, and concealing themselves from law enforcement at the [Shirley grandmothers' home]

---

[4]The United States labels these arguments as responsive to Maynard Shirley's objections to Exhibits 160-184.  See Exhibit Objections Response at 3.  While it is true that Maynard Shirley initially objected to Exhibits 160-184, see Exhibit Objections at 3, he narrowed the scope of those objections to Exhibit 165 and Exhibit 166 -- photographs of the Bear Gryllis Gerber Axe -- at the September 29, 2016, hearing.  See Exhibit Hearing Tr. at 13:11-19 (Duncan, Court).

and sheep camp," Exhibit Objections Response at 4; (iii) third, "to provide evidence of items removed from the BMW by the Defendant and A. W[illiams], prior to [] Maynard and Michael Shirley incinerating the vehicle," Exhibit Objections Response at 4; and (iv) finally, "to provide evidence of items used to burn the vehicle, such as lighter fluid, lighters, and the ax and items used to remove latent prints," Exhibit Objections Response at 4.

The United States does not explicitly address Maynard Shirley's objections to Exhibit 155 ("Bear Gryllis Gerber Knife & Cordage with which Maynard Shirley was armed") and Exhibit 156 ("Bear Gryllis Gerber Knife and Scale"). See Exhibit Objections Response at 1-4. Because Exhibit 155 and Exhibit 156 depict the same evidence as Exhibits 120-121 and Exhibits 165-166, however, the United States' arguments regarding Exhibits 120-121 and Exhibits 165-166 at least implicitly answer Maynard Shirley's objections to Exhibit 155 and Exhibit 156.

9.    **The Hearing**.

The Court held a hearing on the admissibility of the disputed evidence on September 29, 2016. See Exhibit Hearing Tr. at 1:1. At the hearing, the parties largely stuck to the arguments in their briefs. Maynard Shirley opened by outlining four likely categories of evidence related to the knife and axe: (i) testimony as to Maynard Shirley's past possession of knives; (ii) knives found in bags belonging to Maynard Shirley and A. Williams; (iii) the Bear Gryllis Gerber Knife that the United States alleges Maynard Shirley was holding at the time of his arrest; and (iv) the Bear Gryllis Gerber Axe, which was discovered in Maynard Shirley's possession. See Exhibit Hearing Tr. at 15:6-21 (Duncan).

Turning first to the knives, Maynard Shirley argued that the evidence in categories (i) and (ii) has "no relevance to any of the charges in this case." Exhibit Hearing Tr. at 16:1-5 (Duncan). Rather, Maynard Shirley argued, the knives are "simply being offered to show that

[Maynard Shirley is] the kind of person who possesses knives and this is clearly inadmissible under rule 404(b).  It's classic propensity evidence."  Exhibit Hearing Tr. at 16:7-10 (Duncan). Maynard Shirley contended that, in any event, the knives have "high prejudicial value."  Exhibit Hearing Tr. at 16:24-25 (Duncan).  Maynard Shirley explained that the jury will draw an improper inference from the knives, namely, that "Mr. Shirley is the kind of guy who has knives so that means that he must have been the guy that had the knife that was used for injury and killing the victims in this case."  Exhibit Hearing Tr. at 17:5-10 (Duncan).  Maynard Shirley reasoned that this inference is improper because the proffered knives "do not . . . match the description of the knife eyewitnesses claimed were used to stab Brandon and Perry BlueEyes." Exhibit Hearing Tr. at 18:11-19 (Duncan).  Indeed, Maynard Shirley argued, "everyone . . . has knives which we use for different purposes," Exhibit Hearing Tr. at 20:12-14 (Duncan); but, according to Maynard Shirley, the mere "fact that he has knives doesn't really make it any more or less likely that he possessed a knife or was the person who [committed the charged offense]," Exhibit Hearing Tr. at 20:9-12 (Duncan).

With respect to category (iii), Maynard Shirley argued that evidence that Maynard Shirley was holding a knife when he was arrested "doesn't really go for consciousness of guilt." Exhibit Hearing Tr. at 21:16-19 (Duncan).  Maynard Shirley conceded that evidence that he was hiding may tend to establish consciousness of guilt; however, according to Maynard Shirley, "the clutching a knife doesn't add anything."  Exhibit Hearing Tr. at 21:16-19 (Duncan).  Maynard Shirley stated that, in particular, "there is no evidence that Mr. Shirley waived the knife at the officers or threatened to use the knife. He was just holding the knife."  Exhibit Hearing Tr. at 21:19-21 (Duncan).  Thus, in Maynard Shirley's view, "it adds almost no[thing to] this marginal issue of consciousness of guilt," but "it's hugely prejudicial and suggests violence to the jury."

Exhibit Hearing Tr. at 21:21-24 (Duncan)(brackets added).   Maynard Shirley concluded that, given this lack of probative value, "the prejudicial effect of that evidence outweighs any proper purpose or usefulness to the Government's case."   Exhibit Hearing Tr. at 22:5-7 (Duncan).

In response, the United States conceded that it is "not alleging that those are the particular weapons that were used in this case."   Exhibit Hearing Tr. at 23:19-21 (Tapia-Brito).   In fact, the United States stated that its "belief [is] that the weapons used in this case were actually disposed of."   Exhibit Hearing Tr. at 23:21-23 (Tapia-Brito).   The United States argued, however, that the knives are relevant to the "thoroughness of the investigation and to addressing the steps taken during the investigation . . . ."   Exhibit Hearing Tr. at 23:23-24:1-3 (Tapia-Brito).   Additionally, the United States argued, evidence that Maynard Shirley was clutching a knife at the time he was arrested is "evidence of flight and consciousness of guilt . . . ."   Exhibit Hearing Tr. at 26:8-10 (Tapia-Brito).

Having heard arguments from both sides, the Court indicated that it was inclined to bar the admission of evidence in category (i) -- testimony as to Maynard Shirley's past possession of knives -- and in category (ii) -- knives discovered in bags belonging to Maynard Shirley and A. Williams.   See Exhibit Hearing Tr. at 34:8-9 (Court).   The Court explained that, unlike the banana-shaped knife allegedly used in the charged offense, the United States' exhibits amount to "a rather random collection of knives."   Exhibit Hearing Tr. at 34:8-9 (Court).   The Court concluded that it agreed with Maynard Shirley that the evidence was unfairly prejudicial.   See Exhibit Hearing Tr. at 35:1 (Court).   The Court acknowledged, however, that some photographs in category (ii) also depict evidence other than knives that is relevant to the United States' case, such as incendiary devices.   Exhibit Hearing Tr. at 33:23-34:11 (Court).   The Court indicated that it did not "want to prejudice the Government's ability to get in [such] photographs," and that

it would be open to admitting the photographs for another purpose if the knives could be redacted or otherwise eliminated in some way.  Exhibit Hearing Tr. at 34:10-23 (Court).

In response, the United States expressed concern that, without evidence of the knives, it would not be able to adequately demonstrate the thoroughness of its investigation.  See Exhibit Hearing Tr. at 44:16-45:8 (Tapia-Brito).  The United States noted that it has expert testimony, for example, that the knives were forensically tested, and that neither latent prints nor DNA evidence were found linking the knives to the stabbings of Brandon and Perry BlueEyes.  See Exhibit Hearing Tr. at 44:22-45:1 (Tapia-Brito).  The United States explained that it was worried that a failure to discuss such evidence at trial may lead Maynard Shirley to later object that potentially exculpatory evidence was wrongly withheld from the jury.  See Exhibit Hearing Tr. at 45:1-4 (Tapia-Brito).  The Court indicated that it shared this concern, stating that it did not want the United States to suffer prejudice by Maynard Shirley "saying they didn't do some incomplete investigation."  Exhibit Hearing Tr. at 43:1-10 (Court).  The Court then extracted concessions from both parties with respect to this evidence.  In exchange for the United States agreeing to evidence in categories (i) and (ii) being excluded from trial, Maynard Shirley agreed not to criticize the thoroughness of the United States' investigation with respect to the knives, or later assert that the forensic testing's exculpatory results should have been presented to the jury.  See Exhibit Hearing Tr. at 45:9-16 (Duncan).  The parties indicated that they would stipulate to such an agreement.  See Exhibit Hearing Tr. at 45:20-46:8 (Duncan, Court, Tapia-Brito).

With respect to the evidence in category (iii) -- the Bear Gryllis Gerber Knife that Maynard Shirley allegedly held at the time of his arrest -- the Court indicated that the United States has all the evidence it needs on flight and hiding, and that the knife is "prejudicial without any independent probative value . . . ."  Exhibit Hearing Tr. at 35:2-6 (Court).  Thus, the Court

concluded that it would "exclude evidence of the fact that [Maynard Shirley] was clutch[ing] a knife at the time he was arrested."  Exhibit Hearing Tr. at 35:6-8 (Court).

Turning to evidence in category (iv) -- the Bear Gryllis Gerber Axe which was discovered in Maynard Shirley's possession -- Maynard Shirley argued that the United States will allege that the presence of the axe in Maynard Shirley's belongings is relevant to prove that he used the axe to destroy the BMW's backseat to access the gas tank and light it on fire.  See Exhibit Hearing Tr. at 36:1-6 (Duncan).  Maynard Shirley argued that there is no evidence, however, that "links the ax to the destruction of the car.  No presence of incendiary materials [or] tool marks that match the destruction."  Exhibit Hearing Tr. at 36:6-9 (Duncan).  In response, the United States noted that it intends to call witnesses who will testify to Maynard Shirley's use of the axe in the BMW's destruction.  Exhibit Hearing Tr. at 36:12-16 (Tapia-Brito).  Moreover, the United States argued that accelerants were found surrounding the BMW, as well as "in A[.] Williams and Maynard Shirley's possessions including lighters and other objects."  Exhibit Hearing Tr. at 37:7-11 (Tapia-Brito).  The United States argued this evidence "goes to consciousness of guilt, it goes to flight. Their efforts to avoid law enforcement, and to destroy evidence."  Exhibit Hearing Tr. at 38:6-11 (Tapia-Brito).  The United States conceded that it does not have a witness who will identify the Bear Gryllis Gerber Axe as the specific axe used to destroy the BMW; it argued, however, that "[t]here is no one else who has an ax associated with the case [and there is] no evidence of the[re] being axes laying around the area where this vehicle is burned."  Exhibit Hearing Tr. at 38:15-22 (Tapia-Brito).  In rejoinder, Maynard Shirley argued that the Bear Gryllis Gerber Axe pictured in United States Exhibit 156 is "a pretty distinctive ax with the orange [B]ear [Gryllis] logo on the bottom" and that a witness would notice these features in watching the axe being used.    Exhibit Hearing Tr. at 39:8-13 (Duncan).

Consequently, Maynard Shirley argued, there is not "enough that links the ax to the destruction of the car in this case and the prejudicial value of that ax is apparent . . . ." Exhibit Hearing Tr. at 39:14-16 (Duncan).

The Court indicated that it agreed with the United States, stating: "I think I'm going to allow the ax." Exhibit Hearing Tr. at 39:24 (Court). The Court reasoned that the United States "has enough link." Exhibit Hearing Tr. at 39:24-25 (Court). The Court stated that "once . . . witnesses testify that they saw Mr. Shirley use an ax to destroy the BMW then I'm inclined to [admit] picture[s] of the ax." Exhibit Hearing Tr. at 40:4-7 (Court). The Court explained that, unlike knives, "not everybody [h]as axes" and that Maynard Shirley's objection to evidence of the axe goes to the weight of the evidence. Exhibit Hearing Tr. at 40:7-16 (Court).

      10.    **Maynard Shirley's Notice of Photograph Objections.**

On October 12, 2016, Maynard Shirley submitted a notice identifying which particular photographs of knives he believes the Court should exclude in light of the Court's rulings at the Exhibit Hearing. See Photograph Objections at 1. Maynard Shirley contends that the Court should exclude the following Exhibits: (i) Exhibit 121 ("Bear Gryllis Gerber Knife (physical)"); (ii) Exhibit 155 ("Bear Gryllis Gerber Knife & Cordage with which Maynard Shirley was armed"); (iii) Exhibit 156 ("Bear Gryllis Gerber Knife and scale"); (iv) Exhibit 157 ("Documents: Maynard Shirley's Assault and Identity Theft Conviction"); (v) Exhibit 164 ("Items Found in Bags -- close up"); (vi) Exhibit 165 ("Close up of Bear Gryllis Ax with Cordage in bags"); (vii) Exhibit 179 ("Items associated with William's [sic] purse"); and (viii) Exhibit 182 ("Overview of contents of Sentry Safe"). Photograph Objections at 2.

11.     __United States' Response to Maynard Shirley's Photograph Objections__.

On October 15, 2016, the United States submitted a response to Maynard Shirley's Photograph Objections.  See United States' Response to Defendant's Notice of Objections to Proposed Government Evidence Related to Knives Seized From Belongings of Maynard Shirley and Arnelia Williams at 1, filed October 15, 2016 (Doc. 141)("Photograph Objections Response").   In its response, the United States indicates that, based upon the Court's rulings at the hearing, it agrees with Maynard Shirley that Exhibits 121, 155-157, 164-165, 179, and 182 -- all of which depict knives -- are inadmissible.  See Photograph Objections Response at 1-2.

## LAW REGARDING THE RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence." Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).   "Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   United States v. Gutierrez-Castro, 2011 U.S. Dist. LEXIS 88440, at *3 (D.N.M. 2011)(Browning, J.)(citing Fed. R. Evid. 401)("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").   "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'" United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)(Browning, J.) (quoting Fed. R. Evid. 401 advisory committee's note).   Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible.  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)).  The United States Court of Appeals for the Tenth Circuit has reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly."  United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  The Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)).  See

United States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter.  See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999).  Evidence is not unfairly prejudicial merely because it damages a party's case.  See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note).

## LAW REGARDING RULE 404(b)

Under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith.  See Fed. R. Evid. 404(b). Rule 404(b) provides:

**(b) Crimes, Wrongs, or Other Acts**.

**(1) Prohibited Uses**. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) Permitted Uses; Notice in a Criminal Case**. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On request by a defendant in a criminal case, the prosecutor must:

**(A)** provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

- 29 -

> **(B)** do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).  "In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too."  Wilson v. Jara, 2011 U.S. Dist. LEXIS 147752, at *5 (D.N.M. 2011)(Browning, J.), aff'd on other grounds, 512 Fed. App'x. 841 (10th Cir. 2013)(unpublished).  "The rule, however, has a number of 'exceptions'[5] -- purposes for which such evidence will be admissible."  Wilson v. Jara, 2011 U.S. Dist. LEXIS 147752, at *5.  Those purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  See Fed. R. Evid. 404(b).  The Supreme Court has enunciated a four-part inquiry to determine whether evidence is admissible under rule

---

[5]The United States Court of Appeals for the Seventh Circuit stated that describing rule 404(b)(2) as exceptions to 404(b)(1)'s broad rule is a misconception, because subsection (2) permits the evidence to be used for other purposes that are not described in subsection (1).  See United States v. Gomez, 763 F.3d 845, 855 n.3 (7th Cir. 2014)(en banc).

> A common misconception about Rule 404(b) is that it establishes a rule of exclusion subject to certain exceptions.  That's not quite right.  The text of the rule does not say that propensity evidence is inadmissible except when it is used to prove motive, opportunity, intent, etc.  Rather, it says that propensity evidence—other-act evidence offered to prove a person's character and inviting an inference that he acted in conformity therewith—is categorically inadmissible. Fed. R. Evid. 404(b)(1).  But the rule also acknowledges that there may be "another" use for other-act evidence—i.e., a different, non-propensity use. Fed. R. Evid. 404(b)(2). So it's technically incorrect to characterize the purposes listed in subsection (2) as "exceptions" to the rule of subsection (1).  The Rules of Evidence do contain some true exceptions to the rule against propensity evidence, but they're found elsewhere—notably in Rules 412 through 415, which are limited to sexual-assault cases.   In contrast, the purposes enumerated in subsection (2) of Rule 404(b) simply identify situations in which the rule of subsection (1) by its terms does not apply.

United States v. Gomez, 763 F.3d at 855 n.3.

404(b).   See Huddleston v. United States, 485 U.S. 681, 691-92 (1988)(Rehnquist, J.).   The

Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(Ebel, J.)(citing United States v.

Roberts, 185 F.3d 1125 (10th Cir. 1999)(Porfilio, J.)).   See United States v. Higgins, 282 F.3d

1261, 1274 (10th Cir. 2002)(Holloway, J.); United States v. Hardwell, 80 F.3d 1471, 1488 (10th

Cir. 1996)(Briscoe, J.)(citing Huddleston v. United States, 485 U.S. at 691-92).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal

defendant from risking conviction on the basis of evidence of his character.   See United States v.

Lucas, 357 F.3d 599, 611 (6th Cir. 2004)(Boggs, J.).   In United States v. Phillips, 599 F.2d 134

(6th Cir. 1979)(Merritt, J.), the United States Court of Appeals for the Sixth Circuit noted, in

addressing rule 404(b)'s limitations and requirements, that the rule addresses two main policy

concerns: (i) that the jury may convict a "bad man" who deserves to be punished, not because he

is guilty of the crime charged, but because of his prior or subsequent misdeeds; and (ii) that the

jury will infer that, because the accused committed other crimes, he probably committed the

crime charged.   United States v. Phillips, 599 F.2d at 136.   "'[W]hen other-act evidence is

admitted for a proper purpose and is relevant, it may be admissible even though it has 'the

potential impermissible side effect of allowing the jury to infer criminal propensity.'"   United

States v. Moran, 503 F.3d 1135, 1145 (10th Cir. 2007)(Tacha, J.)(quoting United States v.

Cherry, 433 F.3d 698, 701 n.3 (10th Cir. 2005)(Tacha, J.)).   See United States v. Romero, 2011

- 31 -

U.S. Dist. LEXIS 31035, at *12 (D.N.M. 2011)(Browning, J.)("Rule 404(b) evidence almost always has some propensity evidence; that is the reason for limiting instructions.").

When bad-act evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act." United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)(McKee, J.)(alterations omitted). The Tenth Circuit has also stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom." United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(Seymour, J.)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)(Seymour, J.)).

> The Government must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts. In addition, the trial court must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or stating Rule 404(b) will not suffice.

United States v. Romine, 377 F. Supp. 2d 1129, 1132 (D.N.M. 2005)(Browning, J.)(quoting United States v. Kendall, 766 F.2d at 1436). Rules 401 to 403 and the conditional relevancy rules in rule 104(b) govern the applicable burden the proponent must meet to successfully offer evidence under rule 404(b). See Huddleston v. United States, 485 U.S. at 686-91.

The Tenth Circuit has recognized the probative value of uncharged, unrelated acts to show motive, intent, and knowledge, when the uncharged, unrelated acts are similar to the charged crime and sufficiently close in time. See United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)(Briscoe, J.)(finding the district court did not abuse its discretion when it admitted evidence about an event over one year after a defendant's arrest); United States v. Bonnett, 877 F.2d 1450, 1461 (10th Cir. 1989)(Brorby, J.)(holding that evidence about events

over a year after the charged conduct was not "too remote in time and unrelated to the transactions with which he was charged"). The evidence's proponent may show this similarity through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'" United States v. Queen, 132 F.3d 991, 996 (4th Cir. 1997)(Niemeyer, J.)(quoting United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978)(en banc)). See United States v. Bonnett, 877 F.2d at 1461 ("The closeness in time and the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion."). The more similar the act or state of mind, the more relevant the evidence becomes. See United States v. Queen, 132 F.3d at 996. Moreover, when establishing probative value, although the uncharged crime must be similar to the charged offense if it is unrelated to the charged offense, it need not be identical. See United States v. Gutierrez, 696 F.2d 753, 755 (10th Cir. 1982)(McWilliams, J.). "A much greater degree of similarity between the charged crime and the uncharged crime is required when the evidence of the other crime is introduced to prove identity than when it is introduced to prove a state of mind." United States v. Myers, 550 F.2d at 1045.

In United States v. Tan, 254 F.3d 1204 (10th Cir. 2001), the Honorable LeRoy C. Hansen, United States District Judge for the District of New Mexico, excluded, in a second-degree murder case, evidence that the defendant had previously been convicted of driving while intoxicated. See 254 F.3d at 1206-07. The murder charge rose out of the defendant driving a vehicle while intoxicated and striking a motorcyclist with his vehicle. See 254 F.3d at 1206. Judge Hansen concluded that evidence of the other convictions would show only that the defendant had a propensity for drunk driving and would be more prejudicial than probative. See 254 F.3d at 1207. The Tenth Circuit reversed. See 254 F.3d at 1213. In an opinion that the

Honorable Stephen H. Anderson, United States Circuit Judge for the Tenth Circuit, wrote, and Judges Seymour and Kelly joined, the Tenth Circuit held that, because second-degree murder requires proof of malice, the prior convictions were probative of the proper purpose of proving malice or intent, reasoning that a person who is convicted of drunk driving is more aware of the substantial risks and harm that it can cause to others.  See 254 F.3d at 1210-11.

The Court dealt with rule 404(b) in several recent cases.  In United States v. Rodella, 2014 U.S. Dist. LEXIS 160544 (D.N.M. 2014)(Browning, J.), the United States prosecuted Thomas R. Rodella, the former Sheriff of Rio Arriba County, for unlawfully arresting and injuring a motorist during a traffic stop.  See 2014 U.S. Dist. LEXIS 160544, at *4.  The United States argued that Rodella, wearing civilian clothes, tailgated the motorist for an extended period to provoke a disrespectful act before pulling the motorist over and forcing him to submit to Rodella's authority.  See 2014 U.S. Dist. LEXIS 160544, at *5.  The United States offered evidence of three prior incidents in which Rodella, wearing civilian clothes, drove in a threatening manner, stopped motorists, and forced them to acknowledge his authority.  See 2014 U.S. Dist. LEXIS 160544, at *2-3.  The Court admitted the evidence, because there was a high degree of similarities between the prior incidents and the charged crime, and to help the jury determine whether Rodella's conduct was willful.  See 2014 U.S. Dist. LEXIS 160544, at *15. The Court also required the United States to make specific statements in its closing argument and offered to provide a limiting instruction to prevent the jury from using the evidence for propensity.  See 2014 U.S. Dist. LEXIS 160544, at *18.  Rodella appealed the Court's ruling to the Tenth Circuit, arguing that the 404(b) evidence required the jury to make inferences based on

propensity to find that he acted willfully.[6]  See United States v. Rodella, 804 F.3d 1317, 1334

(10th Cir. 2015).

The Tenth Circuit affirmed the Court's decision. See United States v. Rodella, 804 F.3d

at 1334.  It concluded that the jury did not have to make propensity-based inferences to find that

Rodella acted willfully:

> [T]he jury was not required to make any such inferences in order to also infer that
> Rodella purposely had his son drive in a threatening manner in order to provoke
> Tafoya into a disrespectful act, that Tafoya purposely intended to force Tafoya to
> submit to his authority and not to enforce any traffic law, and that Rodella knew
> that his identity as a law enforcement officer was not readily apparent to Tafoya
> until the very end of the encounter.  These inferences would reasonably have
> "rest[ed] on a logic of improbability that recognizes that a prior act involving the
> same knowledge decreases the likelihood that the defendant lacked the requisite
> knowledge in committing the charged offense."  Moran, 503 F.3d at 1145; see
> United States v. Queen, 132 F.3d 991, 996 (4th Cir. 1997)(noting that the prior
> doing of other similar acts is relevant in terms of "reducing the possibility that the
> act in question was done with innocent intent").

United States v. Rodella, 804 F.3d at 1334.  The Tenth Circuit also concluded that the evidence's

potential prejudice did not substantially outweigh its probative value:

> At most, [Rodella] asserts that the government "elicited unnecessary details from
> the [other-act] witnesses -- including about how they felt when Rodella accosted
> them." . . . To the extent Rodella is implying that this testimony would have
> caused the jury to find him guilty on the basis of its emotions or to punish Rodella
> for his involvement in the other acts, the fact of the matter is that Rodella's
> conduct towards Tafoya was more severe than his conduct towards the drivers
> involved in the other three incidents.

---

[6]The Tenth Circuit treats rule 404(b) evidence with less hostility than the Seventh Circuit,
with the Seventh Circuit holding that, if intent is not disputed, then other-act evidence is not
admissible to show intent.  See United States v. Rodella, 101 F. 3d at 1117 n.9 (citing United
States v. Gomez, 763 F.3d at 858).  The Seventh Circuit's treatment of other-act evidence is
distinct between general and specific intent crimes.  See United States v. Rodella, 101 F. Supp.
3d at 1117 n.9.  For general intent crimes, "other-act evidence is not admissible to show intent
unless the defendant puts intent at issue beyond a general denial of guilt," but the Seventh Circuit
rejects a similar rule for specific intent crimes, "because in this class of cases intent is
automatically at issue."  United States v. Rodella, 101 F. Supp. 3d at 1117 n.9 (quoting United
States v. Gomez, 763 F.3d at 858).

United States v. Rodella, 804 F.3d at 1334-35.

Under different facts, the Court reached the opposite conclusion in United States v. Chapman, 2015 U.S. Dist. LEXIS 95211 (D.N.M. 2015)(Browning, J.). In that case, the United States sought to introduce evidence that the defendant in a domestic violence prosecution: (i) threatened his wife to the point where she contacted the police in 2013; (ii) removed his wife's battery cables so that her car would not operate; and (iii) removed all vehicle keys from the couple's home so that his wife could not leave. See 2015 U.S. Dist. LEXIS 95211, at *3. The Court excluded the evidence, explaining that it "is relevant only for propensity purposes" and that the "danger of unfair prejudice substantially outweighs its probative value." 2015 U.S. Dist. LEXIS 95211, at *13-14. First, the Court dismissed the United States' argument that the statements could rebut the defendant's self-defense argument:

> These prior incidents are relevant to showing that L. Chapman's statements that D. Chapman was the initial aggressor and that he acted in self-defense are untrue only if the jury draws the forbidden inference that, because L. Chapman has been angry in the past, he was likely angry this time and, thus, was the initial aggressor and did not act in self-defense.

2015 U.S. Dist. LEXIS 95211, at *15. Second, the Court rejected the United States' argument that the incidents were relevant to show motive on the same grounds. See 2015 U.S. Dist. LEXIS 95211, at *15. It noted that "[e]vidence that L. Chapman became angry could only be relevant to showing motive if the jury inferred that, because L. Chapman has been angry in the past, the reason he assaulted D. Chapman -- his motive -- was that he was angry." 2015 U.S. Dist. LEXIS 95211, at *15. The Court stated that the incidents' unfair prejudice substantially outweighed their probative value. See 2015 U.S. Dist. LEXIS 95211, at *15. Finally, it concluded that the incidents involving the vehicle battery and keys were not "similar and

sufficiently close in time to the charged crime." 2015 U.S. Dist. LEXIS 95211, at \*16 (citing United States v. Olivo, 80 F.3d at 1469).

The Court granted a motion to introduce evidence under rule 404(b) in United States v. Ballou, 59 F. Supp. 3d 1038 (D.N.M. 2014)(Browning, J.). United States v. Ballou involved a nurse's prosecution for assaulting a patient within a Department of Veterans Affairs hospital. See 59 F. Supp. 3d at 1043-44. The United States moved to bar the nurse from introducing testimony and documentary evidence of hostile encounters between the alleged assault victim and various hospital employees, including the defendant. See 59 F. Supp. 3d at 1045-46. The Court allowed the testimony -- but not most of the documents -- about the prior altercations between the victim and hospital employees. See 59 F. Supp. 3d at 1062. It explained that, under the "relaxed 'reverse' rule 404(b) standard" applicable to non-defendants, the nurse could use testimony about prior incidents "to show Ballou's [the nurse's] state of mind -- in particular, his belief regarding the necessity and amount of force he needed to use against Jaquez to defend himself, and the reasonableness of that belief -- as well as to show Jaquez' animus towards the VA Hospital staff, including Ballou specifically." 59 F. Supp. 3d at 1062. It excluded most of the documents on separate hearsay grounds. See 59 F. Supp. 3d at 1063.

In Leon v. FedEx Ground Package System, Inc., 313 F.R.D. 615 (D.N.M. 2016) (Browning, J.), the Court concluded that prior-act evidence was admissible in that civil case, because it was not being used for the "conduct-in-conformity inference that rule 404(b) prohibits." Leon v. FedEx Ground Package Sys., Inc., 313 F.R.D. at 648. Further, the Court noted that the evidence would have a propensity effect, but that would not make it "inadmissible if it is proffered for other purposes." 313 F.R.D. at 648.

## LAW REGARDING RES GESTAE

The Tenth Circuit has explained that "[e]vidence of other crimes should not be suppressed when those facts come in as res gestae -- as part and parcel of the proof of the offense[] charged in the indictment." United States v. Kimball, 73 F.3d 269, 272 (10th Cir. 1995)(Logan, J.)(alteration in original)(internal quotations and citations omitted). The Tenth Circuit has approved using res gestae evidence "when it provides the context for the crime, is necessary to a full presentation of the case, or is appropriate in order to complete the story of the crime on trial by proving its immediate context or the res gestae." United States v. Kimball, 73 F.3d at 272 (internal quotations and citations omitted). The Sixth Circuit has defined res gestae as "those other acts that are inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." United States v. Hardy, 228 F.3d 745, 748 (6th Cir. 2000)(Collier, J.)(citations omitted). See United States v. McVeigh, 153 F.3d at 1203 (describing res gestae evidence as "inextricably intertwined with proper evidence")(internal quotations omitted). The Sixth Circuit in United States v. Hardy explained:

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

228 F.3d at 748 (citation omitted). In Wilson v. Jara, 2011 U.S. Dist. LEXIS 147752, the Court allowed evidence that, in the course of an allegedly unlawful arrest, a plaintiff spat on and touched the defendant police officers. See 2011 U.S. Dist. LEXIS 147752, at *1, *8. The Court concluded that the spitting was "res gestae of the incident," because it placed the plaintiff's conduct "in context": "If Wilson's touching of a police officer, and other conduct and speech,

contributed to [her son's] resisting arrest, her conduct could be viewed as disturbing the peace and disorderly conduct. . . . Wilson should not be able to suggest that everything was calm and her son did not resist arrest."  2011 U.S. Dist. LEXIS 147752, at *8.

In <u>United States v. Ganadonegro</u>, 2011 U.S. Dist. LEXIS 101548 (D.N.M. 2011) (Browning, J.), the Court allowed evidence that a defendant, accused of causing the death of an infant child, called a family member on three occasions to complain that he could not get the infant to stop crying and that the infant was crying when the family member arrived.  <u>See</u> 2011 U.S. Dist. LEXIS 101548, at *1.  The Court concluded that the evidence was res gestae and background information useful to "paint the picture that the baby cried a lot" and not that the defendant acted in conformity with his previous conduct.  2011 U.S. Dist. LEXIS 101548, at *1, *5 ("[T]he evidence that the United States seeks to introduce is not 404(b) evidence . . . . [I]t is closer to background evidence or res gestae evidence . . . .").  Additionally, in <u>United States v. Zuni</u>, 2006 U.S. Dist. LEXIS 95621 (D.N.M. 2006)(Browning, J.), the Court admitted evidence that an alleged rape and kidnapping occurred after a defendant had a dispute with a victim regarding their children, and that the dispute escalated into violence and culminated in the charged offenses.  2006 U.S. Dist. LEXIS 95621, 2006 WL 4109664, at *2-3.  The Court determined that this evidence made the charged offenses understandable "by describing the context in which they arose," as these events had a "causal, spatial, and temporal connection with the charged offense."  2006 U.S. Dist. LEXIS 95621, 2006 WL 4109662, at *6.

## ANALYSIS

Maynard Shirley objects to three principle categories of evidence proffered by the United States: (i) evidence of Maynard Shirley's past and current possession of knives wholly unrelated to the circumstances of either the charged offense or the events following the offense; (ii) a Bear

Gryllis Gerber Knife, which Maynard Shirley allegedly held at the time of his arrest; and (iii) a Bear Gryllis Gerber Axe, which was discovered in Maynard Shirley's belongings after his arrest. The Court concludes that evidence of the knives in category (i) should be excluded, because its risk of unfair prejudice substantially outweighs its marginal probative value under rule 403. The Court holds that evidence of the Bear Gryllis Gerber Knife in category (ii) should likewise be excluded, because its risk of unfair prejudice substantially outweighs its probative value. With respect to category (iii), however, the Court holds that evidence of the Bear Gryllis Gerber Axe should be admitted, because it is more probative than unfairly prejudicial.

I.  **THE COURT WILL EXCLUDE TESTIMONY OF MAYNARD SHIRLEY'S PAST POSSESSION OF KNIVES, AS WELL AS EVIDENCE OF KNIVES FOUND IN MAYNARD SHIRLEY'S BAGS FOLLOWING HIS ARREST.**

The United States seeks to introduce testimony as to Maynard Shirley's prior possession of knives, as well as evidence of pocketknives found during a search of Maynard Shirley's bags subsequent to his arrest. See Exhibit Hearing Tr. at 15:6-21 (Duncan). The United States concedes that none of these knives were used to commit the alleged offenses on March 21, 2015. See Exhibit Hearing Tr. at 23:19-21 (Tapia-Brito). Indeed, the United States' theory is that Maynard Shirley destroyed or disposed of the alleged murder weapon. See Second Res Gestae Motion Reply at 4. The United States contends, however, that these knives are admissible as circumstantial evidence of Maynard Shirley's "access to and ability to produce knives for use during the offense." Second Res Gestae Motion Reply at 7. The United States also argues that these knives are "part and parcel to the proof of the charged offense," and are thus admissible as res gestae evidence. Second Res Gestae Motion Reply at 4. Maynard Shirley counters that evidence of his "possession of, or access to, knives unconnected to the charged offenses . . . is

inadmissible under Rules 402, 403 and 404 of the Federal Rules of Evidence."  Motion in Limine at 5.  The Court will consider the application of these rules of evidence in turn.

Relevant evidence is admissible at trial, <u>see</u> Fed. R. Evid. 401; irrelevant evidence is not, <u>see</u> Fed. R. Evid. 402.  Rule 401 establishes a low bar for relevancy, providing that evidence is relevant if it has any "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  <u>United States v. Gutierrez-Castro</u>, 2011 U.S. Dist. LEXIS 88440, at *3.  Conversely, under rule 402, evidence is irrelevant and therefore inadmissible if it does not tend to make a fact of consequence more or less probable.  <u>See</u> Fed. R. Evid. 402.  The standard for relevancy under the Federal Rules of Evidence is therefore fairly "loose," because "'[a]ny more stringent requirement is unworkable and unrealistic.'"  <u>United States v. Ganadonegro</u>, 854 F. Supp. 2d at 1127 (quoting Fed. R. Evid. 401 advisory committee's note).

Applying this "loose" standard, <u>United States v. Ganadonegro</u>, 854 F. Supp. 2d at 1127, the Court concludes that the proffered evidence is relevant -- however attenuated that relevance may be.  As the Court observed at the hearing, the United States' Exhibits amount to a "random collection of knives" which bear no resemblance to the banana-shaped knife allegedly used in the charged offense.  Exhibit Hearing Tr. at 34:8-9 (Court).  The Court agrees with Maynard Shirley, therefore, that the mere fact that he owns these knives "doesn't really make it any more or less likely that he possessed a knife or was the person who [committed the charged offense]." Exhibit Hearing Tr. at 20:9-12 (Duncan).  The Court does not, however, assess the probative value of this evidence at zero.

First, as Maynard Shirley notes, it is true that everyone possesses and uses knives, at least at the dining table.  <u>See</u> Exhibit Hearing Tr. at 20:12-14 (Duncan).  The fact that Maynard

Shirley owns several pocketknives, however, suggests that he possesses weapons -- or is more likely to possess knives that can be used as weapons -- and does not merely possess table knives. Hence, as the United States insists, these knives' probative value is not zero, because they demonstrate Maynard Shirley's "access to, familiarity with, and use of" the general class of weapon allegedly used in the charged offense. Second Res Gestae Motion Reply at 4. In the Court's estimation, this theory of relevance has some probative value, but that probativity is overshadowed by the fact that the knives are -- concededly -- unrelated to the charged offense; nonetheless, evidence is relevant under rule 401 if it has "<u>any</u> tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401 (emphasis added). Given this liberal standard, the Court concludes that the proffered evidence is relevant.

Second, at a bare minimum, Maynard Shirley's possession of knives unrelated to the charged offense is relevant to the "thoroughness of the investigation," Exhibit Hearing Tr. at 23:23-24:3 (Tapia-Brito), because it illustrates the fruits of that investigation. The United States plans to introduce expert testimony, for example, that the knives were forensically tested, and that neither latent prints nor DNA evidence were found linking the knives to the stabbings of Brandon and Perry BlueEyes. See Exhibit Hearing Tr. at 44:22-45:1 (Tapia-Brito). Evidence of such testing is no doubt relevant under rule 401; if anything, the test results are exculpatory. But the probative value of this evidence is mitigated by the fact that Maynard Shirley has agreed, in exchange for evidence of the knives being excluded from trial, not to criticize the thoroughness of the United States' investigation with respect to the knives or later assert that the forensic testing's exculpatory results should have been presented to the jury. See Exhibit Hearing Tr. at 45:9-16 (Duncan). The parties have indicated that they will stipulate to such an agreement. See Exhibit Hearing Tr. at 45:20-46:8 (Duncan, Court, Tapia-Brito). Thus, the knives are relevant to

show the thoroughness of the investigation; yet here, the probative value of such evidence is negligible, because Maynard Shirley has agreed not to dispute the investigation in this respect.

"[N]ot all relevant evidence is admissible," however.  Therrien v. Target Corp., 617 F.3d 1242, 1255 (10th Cir. 2010).  A court may exclude relevant evidence pursuant to rule 403 "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  United States v. Caraway, 534 F.3d at 1301 (internal quotation marks and citation omitted).  Under rule 404, one improper basis for decision is propensity evidence -- i.e. evidence of uncharged acts offered to prove the character of a person to show action in conformity therewith.  Thus, rule 404 prohibits evidence the relevance of which is based on a "forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too."  Wilson v. Jara, 2011 U.S. Dist. LEXIS 147752, at *5.  The Tenth Circuit has cautioned that, because of the "special danger" of propensity evidence, "trial courts [should] be particularly careful in admitting such evidence."  United States v. Carleo, 576 F.2d 846, 849 (10th Cir. 1976).

Here, the United States contends that evidence of Maynard Shirley's possession of knives illustrates his "access to, familiarity with, and use of" the class of weapon allegedly used in the charged offense.  Second Res Gestae Motion Reply at 4.  Such evidence would pose a "special danger" of unfair prejudice to Maynard Shirley, United States v. Carleo, 576 F.2d at 849, by relying on a "forbidden" propensity inference, Wilson v. Jara, 2011 U.S. Dist. LEXIS 147752, at *5.  Namely, such evidence suggests that Maynard Shirley is a person who possesses knives, thus he is predisposed to use knives, and therefore he must have been the person who stabbed the victims in this case.  See Wilson v. Jara, 2011 U.S. Dist. LEXIS 147752, at *5.  This propensity

inference is impermissible under rule 404.  See, e.g., United States v. Thomas, 321 F.3d at 634

(holding that the trial court erred in admitting evidence of the defendant's tattoo of a revolver,

because it merely showed that the defendant was "the kind of person who would have possessed

the revolver as charged in the indictment . . . .").

Moreover, under rule 403, the danger of unfair prejudice posed by such a propensity

inference substantially outweighs any de minimis probative value of evidence that Maynard

Shirley has knowledge of, and access to, "knives for use during the offense."  Second Res Gestae

Motion Reply at 7.  See, e.g., United States v. Flores-Perez, 849 F.2d 1, 6 (1st Cir. 1988)(stating

that the defendant's prior possession of a gun shows "familiar[ity] with guns," but holding that

"this fact alone would not be sufficiently probative of relevant intent or knowledge to outweigh

the danger of unfair prejudice from permitting the jury to deduce present guilt from evidence of

bad character").  The risk of unfair prejudice likewise outweighs the slight probative value

derived from demonstrating the "thoroughness of the investigation," Exhibit Hearing Tr. at

23:23-24:1-3 (Tapia-Brito), particularly because these knives bear no resemblance to the knife

allegedly used in the charged offense and because Maynard Shirley has agreed not to dispute the

thoroughness of the United States' investigation with respect to these knives.  Exhibit Hearing

Tr. at 45:9-16 (Duncan).

The United States' attempt to characterize Maynard Shirley's pocketknives as res gestae

does not save this evidence.  See Second Res Gestae Motion Reply at 4 (arguing that Maynard

Shirley's "possession of multiple knives" is "part and parcel to the proof of the charged offenses

. . . .").  Evidence of unrelated, uncharged acts is admissible as res gestae when such acts "are

inextricably intertwined with the charged offense[.]"  United States v. Hardy, 228 F.3d at 748

(citations omitted).  The Tenth Circuit has stated that this standard is met where evidence of

uncharged acts provides context for the crime or is "necessary for a full presentation of the case."

United States v. Kimball, 73 F.3d at 272 (internal quotations and citations omitted).  Here, the

United States can tell a robust story of Maynard Shirley's alleged flight and destruction of

evidence, see Second Res Gestae Motion Reply at 4, without mentioning his knife collection.

Maynard Shirley's pocketknives -- concededly unrelated to the charged offense -- are simply not

"inextricably intertwined" with the story of the alleged crime.  United States v. Hardy, 228 F.3d

at 748 (citations omitted).

Accordingly, the Court will exclude trial testimony about Maynard Shirley's past

possession of knives as well as evidence of pocketknives found in his bags after his arrest.  As

the Court stated at the hearing, however, the Court recognizes that the photographs of Maynard

Shirley's pocketknives also capture additional, unrelated items -- such as incendiary devices --

that may be relevant to the United States' case, particularly the destruction of evidence.  Because

the Court does not want to prejudice the United States' ability to admit evidence of those items,

the Court is open to admitting the photographs if the knives can be redacted or otherwise

doctored out of the photographs in some way.  Thus, the Court grants Maynard Shirley's request

to exclude any evidence of pocketknives as depicted in the following Exhibits: (i) Exhibit 157

("Documents: Maynard Shirley's Assault and Identity Theft Conviction"[7]); (ii) Exhibit 163

("Items Found in Bags"[8]); (iii) Exhibit 164 ("Items Found in Bags -- close up"[9]); (iv) Exhibit 165

---

[7]Exhibit 157 appears to be mislabeled.  It does not depict "Documents: Maynard Shirley's Assault and Identity Theft Conviction."  Instead, it depicts what appears to be a pocket knife, as well as A. Williams' Identification Card and Maynard Shirley's Temporary Driver License.  See United States Exhibit No. 157.

[8]Exhibit 163 depicts a wide variety of items, including what appears to be a pocketknife, as well as the Bear Gryllis Gerber Axe.  See United States Exhibit No. 164.

("Close up of Bear Gryllis Ax with Cordage in bags"[10]); (v) Exhibit 179 ("Items associated with William's [sic] purse"[11]); and (vi) Exhibit 182 ("Overview of contents of Sentry Safe"[12]).  The contents of these Exhibits are otherwise admissible, however, if the United States redacts or doctors evidence of the knives out of the photographs.

## II.    THE COURT WILL EXCLUDE EVIDENCE THAT MAYNARD SHIRLEY WAS CLUTCHING A KNIFE AT THE TIME OF HIS ARREST.

The United States seeks to admit evidence that Maynard Shirley "armed himself with a [Bear Gryllis Gerber K]nife and concealed himself . . . between a box spring and mattress" when he was arrested on March 25, 2015.  Res Gestae Motion at 2.  As with the evidence of Maynard Shirley's pocketknives, the United States concedes that the Gerber Knife was not the knife used in the charged offense.  See Res Gestae Motion Reply at 4.  The United States argues, however, that the Gerber Knife evidence is admissible pursuant to rule 404(b) as probative of Maynard Shirley's "access to and ability to produce knives for use during the offense," Res Gestae Motion Reply at 4, and of his "consciousness of guilt and continued flight from law enforcement," Exhibit Objections Response at 3.  The United States also argues that evidence of the knife is admissible as res gestae evidence, because it is "intrinsic to the crime charged." Res Gestae Motion at 10.  In response, Maynard Shirley contends that the evidence is not relevant and that

---

[9]Exhibit 164 depicts a wide variety of items, including what appears to be a pocket knife and the lower part of the Bear Gryllis Gerber Axe.  See United States Exhibit No. 164.

[10]Exhibit 165 depicts a variety of items, including what appears to be a pocket knife and the Bear Gryllis Gerber Axe.  See United States Exhibit No. 164.

[11]Exhibit 179 depicts a wide variety of items, including a pocketknife.  See United States Exhibit No. 179.

[12]Exhibit 182 depicts a variety of items, including a pocketknife.  See United States Exhibit No. 182.

"any arguable probative value that evidence may have is substantially outweighed by the danger of unfair prejudice."  Res Gestae Motion Response at 4.

To determine the admissibility of evidence under rule 404(b), the Court must conduct a four-part inquiry.  See Huddleston v. United States, 485 U.S. at 691-92; United States v. Zamora, 222 F.3d at 762.  Namely, evidence is admissible if: (i) it is offered for a proper purpose; (ii) it is relevant under rule 401; (iii) its potential for unfair prejudice does not substantially outweigh its probative value; and (iv) the court gives a limiting instruction pursuant to rule 105, if the defendant requests one.  See United States v. Zamora, 222 F.3d at 762.  With respect to the first inquiry, proper purposes for admission include proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  See Fed. R. Evid. Rule 404(b)(1).  Rule 404(b)(1), however, prohibits evidence of uncharged acts offered to prove criminal propensity.  See Wilson v. Jara, 2011 U.S. Dist. LEXIS 147752, at *5.

The United States argues that evidence that Maynard Shirley clutched a knife at the time of his arrest is admissible to prove his "access to and ability to produce knives for use during the offense[.]"  Res Gestae Motion Reply at 4.  The United States reasons that "sharp objects" were used in the offense, and thus, Maynard Shirley's possession of a knife at the time of his arrest is "relevant to the determination of the use of a dangerous weapon during the offense[.]"  Res Gestae Motion Reply at 4.  This proffered purpose is improper for largely the same reason that evidence of Maynard Shirley's possession of pocketknives is inadmissible -- it relies on an impermissible inference of criminal propensity.  Namely, such evidence suggests that Maynard Shirley is a person who possesses and is predisposed to use knives, and that therefore, he must have been the person who used "sharp objects" to stab the victims in this case.  See Wilson v. Jara, 2011 U.S. Dist. LEXIS 147752, at *5 (stating that this chain of inferences is improper).

Rule 404(b)(1) prohibits such propensity evidence.  See United States v. Morley, 199 F.3d at 133 (stating that rule 404(b) evidence must fit "into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act.").

It is, perhaps, possible that proving "access" to something is a proper purpose under rule 404(b).  Indeed, a proper purpose under rule 404(b) is simply one that is "probative of a material issue other than character."  Huddleston v. United States, 485 U.S. at 686.  The proponent must, however, still demonstrate a sufficient "similarity in conduct" and "closeness in time" for the unrelated evidence to be probative, and hence, admissible.  United States v. Bonnett, 877 F.2d at 1461.  Context, therefore, is important -- the circumstances surrounding other acts must suggest that the proffered evidence is actually "probative of a material issue[.]"  Huddleston v. United States, 485 U.S. at 686.  Here, the context required for proof of "access" to be probative is likely either: (i) a more unusual, less readily available object than a knife; or (ii) a closer similarity between the knife allegedly used in the crime and the knife to which the defendant has access.  Everyone has access to, and uses, knives; and here, the knife Maynard Shirley was clutching at the time of his arrest does not resemble the knife allegedly used in the charged offense.  See Res Gestae Motion Reply at 4 (conceding this fact).  Thus, while access may be a proper purpose in some circumstances, the context here does not support a sufficient inference of probativity for the Court to reach that conclusion.

More promising, the United States also argues that evidence that Maynard Shirley concealed himself with a knife when he was arrested is relevant to show his "consciousness of guilt and continued flight from law enforcement."  Exhibit Objections Response at 3.  The Tenth Circuit has stated that, traditionally, "flight has been viewed as an admission by conduct which expresses consciousness of guilt."  United States v. Martinez, 681 F.2d 1248, 1256 (10th Cir.

1982)(citing McCormick, Handbook of the Law of Evidence § 271 at 655 (2d ed. 1972)).

Evidence of such "admission by conduct" is proper under rule 404(b) if an inference of guilt

logically follows from the activity of the defendant.  United States v. Martinez, 681 F.2d at 1256.

Various Courts of Appeals have articulated a four-part test for evaluating the probative value of

such evidence.  For example, in United States v. Myers, the United States Court of Appeals for

the Fifth Circuit stated that the probative value of flight

> depends upon the degree of confidence with which four inferences can be drawn:
> (1) from the defendant's behavior to flight; (2) from flight to consciousness of
> guilt; (3) from consciousness of guilt to consciousness of guilt concerning the
> crime charged; and (4) from consciousness of guilt concerning the crime charged
> to actual guilt of the crime charged.

550 F.2d at 1049.  See United States v. Johnson, 535 F.3d at 892 (articulating the same test).

The Tenth Circuit, however, has stated that "the facts as a whole are of importance."  United

States v. Martinez, 681 F.2d at 1256.  Under either approach, where there is a strong inference of

guilt, evidence of admission by conduct "carries with it a strong presumption of admissibility."

United States v. Martinez, 681 F.2d at 1256 (citation omitted).

Given these principles, evidence of Maynard Shirley's possession of a knife during flight

and concealment from law enforcement is proper under rule 404(b) because it raises an inference

of his consciousness of guilt.  See United States v. Martinez, 681 F.2d at 1256.  Such evidence

does not suggest normal travel; rather, it suggests that Maynard Shirley was acting upon a guilty

conscience.  See United States v. Zanghi, 189 F.3d 71, 83 (1st Cir. 1999)(holding that evidence

of flight is admissible to prove a "guilty mind" if "there is an adequate factual predicate for the

inference that the defendant's movement was indicative of a guilty conscience, and not normal

travel."), cert. denied, 528 U.S. 1097 (2000).  Evidence of Maynard Shirley's concealment while

holding a knife is also relevant under rule 401, because the inference of guilt suggested by these

- 49 -

actions tends to establish his involvement in, and subsequent flight from, the charged offense on March 21, 2015.  See United States v. Gutierrez-Castro, 2011 U.S. Dist. LEXIS 88440, at *3. Indeed, that Maynard Shirley was found clutching a "survivalist" Bear Gryllis Gerber Knife, see Exhibit Hearing Tr. at 15:24-16:1 (Duncan)(explaining that Bear Gryllis is a "survivalist" TV personality), is at least somewhat probative of a man with plans to flee for an extended period of time, if necessary.  This inference is buttressed by additional evidence, included in the United States' photographs, that Maynard Shirley had other survivalist gear, such as "a number of [B]ear [Gryllis] materials, a backpack, [and] other [] items [associated] with camping and being away from a residence."  Exhibit Hearing Tr. at 29:8-15 (Tapia-Brito).

Having concluded that the evidence is offered for a proper purpose under rule 404(b) and that it is relevant under rule 401, the Court must assess whether the evidence's potential for unfair prejudice substantially outweighs its probative value under rule 403.  See United States v. Zamora, 222 F.3d at 762 (stating that rule 403 balancing is the third analytical step to determine admissibility under rule 404(b)).  The Court concludes that evidence of the knife is substantially more unfairly prejudicial than probative.  While it is true that evidence of Maynard Shirley's alleged "admission by conduct" is relevant, evidence that he was clutching a knife when he was arrested has little to no independent probative value.  Rather, evidence that Maynard Shirley concealed himself from authorities during flight is sufficient, by itself, to establish a strong inference of his consciousness of guilt -- that he was clutching a knife at the time adds little, if anything, to that inference.  That there is no allegation that Maynard Shirley used -- or threatened to use -- the knife against the arresting officers reinforces this conclusion.  Moreover, while evidence that Maynard Shirley had a survivalist knife is probative of his potential plans for extended flight, discussed supra, that probativity is equally advanced by evidence of his

backpack and other survivalist gear.  See Exhibit Hearing Tr. at 29:8-15 (Tapia-Brito).  At the same time, there is a substantial risk that evidence of the knife would suggest to the jury that Maynard Shirley "is the kind of person who owns knives or that he has a violent disposition." Motion in Limine at 6.  The Court therefore concludes that the risk of unfair prejudice to Maynard Shirley substantially outweighs whatever duplicative probativity evidence of the knife may have.

At the hearing, the Court pressed the United States to articulate what distinction it would make to the jury between evidence of the knife on the one hand, and evidence that Maynard Shirley was hiding between a mattress and box spring when he was arrested on the other.  See Exhibit Hearing Tr. at 28:2-4 (Court).  The Court asked, assuming that evidence of concealment was admitted, what the United States would want the jury to conclude from the fact that Maynard Shirley was also holding a knife when he was discovered.  See Exhibit Hearing Tr. at 28:2-4 (Court).  In other words, the Court pressed the United States to identify what it would ask the jury to infer from the evidence of the knife that would be different from what it would ask the jury to infer from the evidence of Maynard Shirley's concealment alone.  See Exhibit Hearing Tr. at 28:2-4 (Court).  The United States struggled to draw a meaningful distinction, responding that "[i]t's just part of the larger pattern of his concealment and the steps he's taking to avoid law enforcement."  Exhibit Hearing Tr. at 28:5-7 (Tapia-Brito).  Absent something extra, given the risk of unfair prejudice that evidence of the knife poses, the Court will admit evidence that Maynard Shirley was hiding when he was arrested, but exclude evidence of the knife.

Notwithstanding the above, the United States presses that Maynard Shirley's clutching of the knife is admissible as res gestae evidence, because it is "intrinsic to the crime charged." Res Gestae Motion at 10.  The Tenth Circuit has indeed approved of admitting evidence of uncharged

acts under a res gestae theory -- when such acts are "part and parcel of the proof of the offense[]" charged in the indictment." United States v. Kimball, 73 F.3d at 272 (alteration in original) (internal quotation marks and citations omitted).  Moreover, rule 404(b)'s strictures apply only to evidence of acts extrinsic to the crime charged, and not to intrinsic acts.  United States v. Ford, 613 F.3d 1263, 1267 (10th Cir. 2010)(stating that intrinsic evidence is "not subject to Federal Rule of Evidence 404(b)).  Accordingly, evidence of uncharged acts is admissible as res gestae when such acts "are inextricably intertwined with the charged offense[.]"  United States v. Hardy, 228 F.3d at 748 (citations omitted).  The Tenth Circuit has stated that this standard is met where evidence of uncharged acts provides context for the crime or is "necessary for a full presentation of the case."  United States v. Kimball, 73 F.3d at 272 (internal quotations and citations omitted).  Here, the United States contends that "[t]he circumstances leading up to a Defendant's arrest are 'inextricably intertwined with proper evidence'" and are thus not subject to rule 404(b).  Res Gestae Motion at 10 (quoting United States v. McVeigh, 153 F.3d at 1203).

The United States' recitation of the standards applicable to res gestae evidence is largely accurate, but it is unavailing.  First, it is difficult to argue that hiding between a mattress and box spring -- days after the alleged crime and in a different city -- is "inextricably intertwined" with evidence of the crime.  Indeed, even United States v. McVeigh -- the authority on which the United States relies for the proposition that the circumstances surrounding a defendant's arrest are "inextricably intertwined" with the crime, Res Gestae Motion at 10 -- does not support the United States' position.  In United States v. McVeigh, the Tenth Circuit held, in the context of an appeal by Oklahoma City Bomber Timothy J. McVeigh from his conviction and death sentence for the bombing of the Alfred P. Murrah Federal Building in Oklahoma City, Oklahoma, which resulted in the deaths of 168 people, that "testimony establishing the identity of the victims and

the cause of death was . . . inextricably 'intertwined with proper evidence.'"  153 F.3d at 1203. The Tenth Circuit did not hold, as the United States insists, that the circumstances leading up to Timothy J. McVeigh's arrest were inextricably intertwined.  Furthermore, evidence of the knife is not res gestae, because the United States can robustly tell the story of the alleged crime and of Maynard Shirley's concealment without presenting evidence that he was clutching a knife when he was discovered.  See United States v. Kimball, 73 F.3d at 272 (stating that res gestae evidence is admissible if "necessary for a full presentation of the case.").

Second, the United States concedes -- as it must -- that, although res gestae evidence is exempt from rule 404(b), res gestae evidence remains subject to rule 403 scrutiny.  See Second Res Gestae Motion Reply at 6.  As discussed supra, the United States advances no reason why the evidence that Maynard Shirley clutched a knife at the time of his arrest has any unique probative value that the evidence of his flight and concealment does not already capture.  That the evidence is res gestae adds little if anything in terms of its probative value.  Thus, even if evidence of the knife is intrinsic to the crime charged, it remains unfairly prejudicial without having much, if any, independent probative value.  Whether offered to prove "consciousness of guilt," Exhibit Objections Response at 3, or as res gestae, see Res Gestae Motion at 10, the evidence is the same and poses the same risk that the jury will infer that Maynard Shirley has a violent disposition.  Accordingly, the Court concludes that, under either theory, the risk of unfair prejudice substantially outweighs the knife's probative value.  See Fed. R. Evid. 403.

In light of the above analysis, the Court will exclude evidence that Maynard Shirley was clutching a Bear Gryllis Gerber Knife at the time of his arrest.  Thus, the Court grants Maynard Shirley's request to exclude the following Exhibits: (i) Exhibit 121 ("Bear Gryllis Gerber Knife

(physical)"[13]); (ii) Exhibit 155 ("Bear Gryllis Gerber Knife & Cordage with which Maynard

Shirley was armed"); and (iii) Exhibit 156 ("Bear Gryllis Gerber Knife and scale").  The United

States may otherwise present evidence of Maynard Shirley's concealment between the mattress

and box spring.

## III.   THE COURT WILL ADMIT EVIDENCE OF MAYNARD SHIRLEY'S POSSESSION OF A BEAR GRYLLIS GERBER AXE.

The United States seeks to introduce evidence of a Bear Gryllis Gerber Axe discovered in

Maynard Shirley's belongings after his arrest.  See Exhibit Objections Response at 4.  Unlike the

evidence of the knives, which the United States concedes are unrelated to the charged offense,

the United States alleges that Maynard Shirley actually used the axe in the destruction of his

white BMW -- that the axe was used to hack into the BMW's back seat to gain access to the gas

tank and light the car on fire.  See Exhibit Objections Response at 2.  Accordingly, the United

States argues that evidence of the axe is admissible as probative of Maynard Shirley's

"participation in the destruction of evidence" and as "evidence of his consciousness of guilt."

Exhibit Objections Response at 2-3.  In response, Maynard Shirley argues that such evidence is

"only marginally probative" and that its probative value is "substantially outweighed by the very

real dangers of unfair prejudice . . . ."  Motion in Limine at 7 (internal quotation marks and

citations omitted).

As discussed supra, the standard for relevancy under rule 401 is fairly "loose."  United

States v. Ganadonegro, 854 F. Supp. 2d at 1127.  Rule 401 provides that "[e]vidence is relevant

if: (a) it has any tendency to make a fact more or less probable than it would be without the

---

[13]Exhibit 121 has now been withdrawn.  See United States Exhibit No. 121 ("Withdrawn Exhibit").  The Court nevertheless rules on its admissibility to fully resolve the parties' dispute as to evidence of the Bear Gryllis Gerber Knife.

evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Here, evidence that Maynard Shirley possesses an axe makes it more probable that he possessed the axe that was used in the destruction of the BMW, which, in turn, makes it more probable that he destroyed the BMW with the axe. See Fed. R. Evid. 401. See also United States v. Quattrone, 441 F.3d 153, 188 (2d Cir. 2006)(noting that drawn out inferential chains do not defeat a threshold finding of relevance pursuant to rule 401). Such destruction of evidence is a "fact of consequence" in determining the action, Fed. R. Evid. 401, because it is "probative of consciousness of guilt," United States v. Forston, 194 F.3d 730, 737 (6th Cir. 1999)("Spoiliation [sic] evidence . . . is generally admissible because it is probative of consciousness of guilt.").

Maynard Shirley objects to this analysis, arguing that the axe is irrelevant because there is no evidence that "links the ax to the destruction of the car" and "[n]o presence of incendiary materials [or] tool marks that match the destruction." Exhibit Hearing Tr. at 36:6-9 (Duncan). He adds that the axe has "distinctive" features which a witness would arguably notice. Exhibit Hearing Tr. at 39:8-13 (Duncan). This line of argumentation is unpersuasive. While it is true that the United States does not have a witness who will identify the Bear Gryllis Gerber Axe as the precise axe that was used to destroy the BMW, there are no other individuals associated with this case that possess an axe, and no axe was found in the area where the BMW was burned. See Exhibit Hearing Tr. at 38:15-22 (Tapia-Brito). Indeed, as the Court noted at the hearing, not everyone possesses axes -- unlike knives -- so their very possession is distinctive. See Exhibit Hearing Tr. at 40:7-16 (Court). Thus, that an axe was found in Maynard Shirley's belongings -- and not with any other associated individual -- is far more probative of his actions than his possession of knives, which are found in every household. Moreover, despite Maynard Shirley's assertion to the contrary, the United States has sufficient evidence establishing a link between the

destruction of the BMW and the axe discovered in Maynard Shirley's possession.  The United

States has indicated that it has witnesses, for example, who will testify to Maynard Shirley's use

of an axe in the destruction of the BMW.  See Exhibit Hearing Tr. at 36:12-16 (Tapia-Brito).

The United States also has evidence of accelerants, "including lighters and other objects," found

surrounding the burned BMW as well as in Maynard Shirley's possessions.  Exhibit Hearing Tr.

at 37:7-11 (Tapia-Brito).  Given this evidence, the Court concludes that there is a sufficient link

between the axe and the destroyed BMW for evidence of the axe to be relevant under rule 401.

Having determined relevance, the Court must assess whether the evidence of the axe is

offered for a proper purpose under rule 404(b).  See United States v. Zamora, 222 F.3d at 762.

Here, the United States contends that the axe is probative of Maynard Shirley's "consciousness

of guilt."  Exhibit Objections Response at 2-3.  The Court concludes that this purpose is proper

under rule 404(b).  "Spoliation is defined as the intentional destruction of evidence that is

presumed to be unfavorable to the party responsible for its destruction."  United States v.

Copeland, 321 F.3d 582, 587 (6th Cir. 2003)(citing Black's Law Dictionary at 1401 (6th ed.

1990)).  Numerous Courts of Appeals have concluded that, although rule 404(b) does not list

spoliation, spoliation evidence is admissible to show consciousness of guilt.  See, e.g., United

States v. Mendez-Ortiz, 810 F.2d 76, 79 (6th Cir. 1986); United States v. Corbin, 734 F.2d 643,

656 (11th Cir. 1984); United States v. Monahan, 633 F.2d 984, 985 (1st Cir. 1980)(per curiam);

United States v. Posey, 611 F.2d 1389, 1391 (5th Cir. 1980).  Indeed, because such evidence

"tends to establish consciousness of guilt without any inference as to the character of the

spoliator, its admission does not violate Rule 404(b)."  United States v. Mendez-Ortiz, 810 F.2d

at 79 (citing 22 C. Wright & K. Graham, Federal Practice and Procedure § 5240, at 476 (1978)).

In this case, the United States seeks to admit evidence that Maynard Shirley used the axe found

in his possession to destroy his BMW to eliminate evidence of his involvement in, and flight from, the incident at the BlueEyes' home on March 21, 2015.  See Exhibit Objections Response at 2-3.  Evidence of such spoliation is probative of Maynard Shirley's consciousness of guilt, because it illustrates his intentional efforts to avoid law enforcement.  Thus, evidence of the axe is properly offered under rule 404(b) for this purpose.  See United States v. Mendez-Ortiz, 810 F.2d at 79.

Maynard Shirley, apparently conceding the propriety of proving "consciousness of guilt" under rule 404(b), contends that the Court should nonetheless exclude evidence of the axe because its probative value is "substantially outweighed by the very real danger[] of unfair prejudice" under rule 403.  Motion in Limine at 7.  In terms of probativity, he argues that "consciousness of guilt" is "'only marginally probative as to the ultimate issue'" whether he committed the charged offense.  Motion in Limine at 7 (quoting United States v. Johnson, 535 F.3d at 895).  At the same time, he contends, "[t]here is an unacceptable risk that the jury will improperly infer that Mr. Shirley's possession of the axe makes it more likely that he possessed one of the knives" used to injure Brandon BlueEyes or Perry BlueEyes, or that "the axe was used to commit the charged offenses."  Motion in Limine at 8.  In his view, this risk amounts to "unfair prejudice."  Motion in Limine at 7.

The Court disagrees with this assessment of the rule 403 balance.  First, on these facts, evidence of the axe allegedly used to destroy the BMW is more than "marginally probative" of Maynard Shirley's consciousness of guilt.  Motion in Limine at 7.  Maynard Shirley cites to United States v. Johnson, where the Fifth Circuit held that the probative value of evidence of "consciousness of guilt" depends on the facts of each case and on the "degree of confidence" with which inferences can be drawn from "the defendant's behavior . . . to actual guilt of the

crime charged." 535 F.3d at 895 (internal quotation marks and citations omitted). As discussed supra, the Tenth Circuit does not require such a multi-step analysis if "the facts as a whole" suggest a strong inference of guilt. United States v. Martinez, 681 F.2d at 1256. In such a case, evidence of admission by conduct "carries with it a strong presumption of admissibility." United States v. Martinez, 681 F.2d at 1256 (citation omitted). Here, "the facts as a whole," United States v. Martinez, 681 F.2d at 1256, support a strong inference of consciousness of guilt. Witnesses to the alleged offense on March 21, 2015, state that they saw the Shirley brothers drive away from the BlueEyes' home in a white BMW. See Amended Complaint ¶ 7, at 3. Later that day, Maynard Shirley and his brother, Michael Shirley, drove from Kirtland to their grandmother's home in Farmington. See Amended Complaint ¶ 15, at 9. Two days later, on March 23, 2015, when relatives came to the house to talk, the brothers proclaimed that "law enforcement could come and try to get them if they wanted." Amended Complaint ¶ 15, at 9. After the relatives left the house, the brothers promptly used an axe to damage and set fire to Maynard Shirley's white BMW. See Res Gestae Motion at 8. The next day, March 24, 2015, Maynard Shirley relocated to Aztec to stay with a cousin. See Preliminary Hearing Tr. at 37:2-5 (Mott, Cahoon). Maynard Shirley was subsequently arrested in Aztec, and an axe was found in his belongings. See Motion in Limine at 2. Taken together, these facts suggest that Maynard Shirley's "actual guilt of the crime charged," United States v. Johnson, 535 F.3d at 895, motivated his alleged actions with respect to the destruction of his BMW.

Second, in the Court's view, there is little risk that Maynard Shirley will suffer "unfair prejudice" if evidence of the axe is admitted. Motion in Limine at 7. "Unfair prejudice," as used in rule 403, "does not mean the damage to the defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on

an improper basis." United States v. Mendez-Ortiz, 810 F.2d at 79.  One improper basis for decision is propensity evidence; however, as noted above, spoliation evidence "tends to establish consciousness of guilt without any inference as to the character of the spoliator . . . ."  United States v. Mendez-Ortiz, 810 F.2d at 79 (citation omitted).  Maynard Shirley presses, however, that the "jury will improperly infer that Mr. Shirley's possession of the axe makes it more likely that he possessed one of the knives" used in the charged offense or that "the axe was used to commit the charged offenses."  Motion in Limine at 8.  The Court does not assess a very high risk of either outcome.  The United States alleges that a banana-shaped knife was used in the charged offense -- Maynard Shirley suggests no reason: (i) why evidence of his possession of the axe would lead the jury to conclude that he also possessed a banana knife; or (ii) how such evidence would cause the jury to simply ignore the United States' allegation that a banana knife was used in the offense, and, instead, conclude that the axe was used.  In any event, if Maynard Shirley requests, the Court can give a limiting instruction pursuant to rule 105 of the Federal Rules of Evidence, directing the jury to consider evidence of the axe only for its probative value about the BMW's destruction and Maynard Shirley's consciousness of guilt, and not for the purpose of concluding that he possessed a knife or used the axe to commit the alleged murder.  See United States v. Zamora, 222 F.3d at 762 (stating that this is the final step under rule 404(b) analysis).

Having concluded that evidence of Maynard Shirley's possession of a Bear Gryllis Gerber Axe is relevant, properly admitted to prove "consciousness of guilt," and more probative than unfairly prejudicial, the Court holds that evidence of the axe is admissible at trial.  Thus, the Court denies Maynard Shirley's request to exclude the following Exhibits: (i) Exhibit 120 ("Bear

Gryllis Gerber Ax (Physical)"[14]); (ii) Exhibit 163 ("Items Found in Bags"); (iii) Exhibit 164 ("Items Found in Bags -- close up"); (iv) Exhibit 165 ("Close up of Bear Gryllis Ax with Cordage in bags"); and (v) Exhibit 166 ("Bear Gryllis Ax with Scale").  To the extent that any of these Exhibits include depictions of knives, however, the Court holds that they are admissible only if the knives are redacted, or otherwise doctored out of the photographs.  Exhibits 163, 164, and 165 all appear to include such depictions of knives.

**IT IS ORDERED** that: (i) Defendant Maynard Shirley's Objections to United States' Exhibit List [Doc. 82], filed September 20, 2016 (Doc. 96), are granted in part and overruled in part; and (ii) Defendant Maynard Shirley's Motion in Limine Regarding Possession of Knives and an Axe, Filed September 26, 2016 (Doc. 116) is granted in part and denied in part. Specifically, the Court makes the following rulings: (i) the Court will admit Exhibit 120 ("Bear Gryllis Gerber Ax (Physical)"); (ii) the Court will exclude Exhibit 121 ("Bear Gryllis Gerber Knife (physical)"); (iii) the Court will exclude Exhibit 155 ("Bear Gryllis Gerber Knife & Cordage with which Maynard Shirley was armed"); (iv) the Court will exclude Exhibit 156 ("Bear Gryllis Gerber Knife and scale"); (v) the Court will admit Exhibit 157 ("Documents: Maynard Shirley's Assault and Identity Theft Conviction"), but only if any knives depicted therein are redacted or otherwise doctored out of the photograph; (vi) the Court will admit Exhibit 163 ("Items Found in Bags"), but only if any knives depicted therein are redacted or otherwise doctored out of the photograph; (vii) the Court will admit Exhibit 164 ("Items Found in Bags -- close up"), but only if any knives depicted therein are redacted or otherwise doctored out of the photograph; (viii) the Court will admit Exhibit 165 ("Close up of Bear Gryllis Ax with

---

[14]Exhibit 120 has now been withdrawn.  See United States Exhibit No. 121 ("Withdrawn Exhibit").  The Court nevertheless rules on its admissibility to fully resolve the parties' dispute as to evidence of the Bear Gryllis Gerber Axe.

Cordage in bags"), but only if any knives depicted therein are redacted or otherwise doctored out of the photograph; (ix) the Court will admit Exhibit 166 ("Bear Gryllis Ax with Scale"); (x) the Court will admit Exhibit 179 ("Items associated with William's [sic] purse"), but only if any knives depicted therein are redacted or otherwise doctored out of the photograph; and (xi) the Court will admit Exhibit 182 ("Overview of contents of Sentry Safe"), but only if any knives depicted therein are redacted or otherwise doctored out of the photograph.  All other requests in Maynard Shirley's Exhibit Objections and Motion in Limine respecting evidence of knives and an axe are overruled and denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Damon P. Martinez
United States Attorney
Albuquerque, New Mexico

--and--

Linda Mott
Niki Tapia-Brito
Nicholas James Marshall
Assistant United States Attorneys
Albuquerque, New Mexico

    *Attorneys for the Plaintiff United States of America*

Mary (Molly) E. Schmidt-Nowara
Garcia Ives Nowara
Albuquerque, New Mexico

--and--

Theresa M. Duncan
Albuquerque, New Mexico

    *Attorneys for the Defendant*